NASH v. KENYON.

DRAINS — COMMISSIONERS — PERSONAL LIABILITY — PURCHASERS OF DRAIN ORDERS.

The purchasers of drain orders issued against a drain for which the board of supervisors refuse without just cause to spread the tax, cannot maintain an action for damages against the drain commissioner issuing the orders on the ground that his misbehavior in office causes the refusal of the board.

Error to Ionia; Davis, J. Submitted October 14, 1907. (Docket No. 40.) Decided February 15, 1908.

Case by Edwin Nash and Ernest Nash, copartners as Edwin Nash & Son, against Marvin E. Kenyon for damages caused by the illegality of certain drain proceedings. There was an order sustaining a demurrer to the declaration, and plaintiffs bring error. Affirmed.

*R. A. & W. E. Hawley,* for appellants.

*John Nichol,* for appellee.

HOOKER, J. The plaintiffs have appealed from a judg-

ment for the defendant upon demurrer to the declaration. The following statement shows plaintiffs' claim as set forth in their declaration.

One Elisha Strong was acting county drain commissioner of Ionia county, in September, 1901, and on or about September 12, 1901, there was filed with him a petition for cleaning out an existing township drain, known as the "Campbell Creek Drain," signed by the number and class of persons required by law. Strong made an examination and inspection of the lands traversed by and to be benefited by the cleaning out of the drain, and determined that the same would be for the public benefit, etc., caused a survey and measurement of the Campbell Creek Drain to be made by a competent surveyor, and determined and ordered that said drain be straightened and constructed on a different line than originally constructed at the lower end across a parcel of land known as the Loomis lot. Subsequently the defendant succeeded Elisha Strong as drain commissioner of said county, his term beginning on January 1, 1902, and ending on January 1, 1904. On or about September 15, 1902, the defendant made an order (known as the final order of determination) wherein and whereby he ordered and determined that said drain should be cleaned out in accordance with a diagram incorporated in said order, and should also be straightened at the lower end thereof across said Loomis lot as also provided in Strong's order of determination, but without having acquired any right of way across said lot, and also described, fixed, and determined a special assessment district for the purpose of said drain, and described the parcels of lands constituting it. On the same day he made and issued his notice of letting drain contracts in the matter of said drain, wherein and whereby he gave notice that he would proceed to receive bids for the *cleaning out* of said drain at the residence of one Trowbridge, in the proper township, on October 3, 1902, at nine o'clock a. m., and at such time and place the assessment for benefits and the lands included in said

assessment district would be subject to review, and own-ers and persons interested in said lands were cited to ap-pear and be heard in relation thereto; but no mention was made or notice given of receiving bids for straightening said drain. On September 25, 1902, defendant made an affidavit of service of notice of letting drain contract and assessment of benefits, showing that on September 16th he served said notice of letting contract upon various named interested parties by leaving copies with divers other parties, but said affidavit did not state that said no-tice was served on any of the persons named by leaving a copy at his or her residence with some person of suitable age and discretion who was informed of its contents, or that any search was made to find the person entitled to service of such notice before making substituted service by copy, though all such persons were residents of said township, or that any of said persons had ever been per-sonally served with any notice of said drain letting or re-view.

After making said final order defendant divided the route into convenient sections for letting, and marked the grade upon grade stakes along the entire route of said drain, including the changed line across said Loomis lot. On October 3d, at the place designated, defendant received bids for the " construction " of said sections of said drain, including the changed route, which was made a section by itself, and let a job applicable to said last-mentioned section to one Swan Johnson for $266.40, who then and there entered into a contract to construct the same along said changed line, defendant at the same time agreeing with said Johnson that he only required him to clear out said old drain, which he subsequently did, defendant not having acquired any right of way for the proposed new route; the cost and expense of the work done by Johnson should have been much less than said sum of $266.40, but defendant accepted such work as a full and complete per-formance of said contract. Several other sections were let and contracted for with divers persons named, but

they were not performed, no extension of time has been granted by defendant or his successor, nor has any of them been declared forfeited by them or relet. On or about October 14, 1902, defendant filed his computation of the cost of said drain at the amount of $2,060, and apportioned the same, and on October 13th he made and issued his drain special assessment rolls.

The declaration alleges that it was the duty of defendant, after the delivery to him of the petition for said drain, to act in a careful, proper, and diligent manner in the premises and without fraud or negligence in making the several orders of determination, issuing, publishing, and serving the various notices required by law, acquiring the necessary rights of way for said drain, letting contracts for construction and requiring prompt performance of the same, and forfeiting contracts not seasonably performed, but that not regarding his duty, and contriving and intending to injure and aggrieve such persons as might or should perform labor and services in digging, constructing, laying out, and establishing said drain, or such persons as might or should advance moneys therefor, or should purchase drain orders issued by him, did not and would not so act in the various respects mentioned, but negligently and wrongfully performed the various acts stated in the manner hereinbefore stated; that on or about October 4, 1902, defendant issued drain orders upon the treasurer of Ionia county, to various persons, for small sums aggregating $23, for labor in making a survey and for printing notices of letting and for the use of a team in said survey, which said orders were sold and assigned to plaintiff for a valuable consideration on or about said October 4th.

At the October, 1903, session of the board of supervisors, a certified statement of the several amounts assessed for the construction of said drain was presented to said board for their action, and said board, by reason of said wrongful and unlawful omissions and neglect of said defendant, refused and have since refused, to order

said tax or any part thereof spread upon the rolls, and damage is claimed by reason of the premises.

The grounds of demurrer stated are:

1. That the declaration does not state that the plaintiffs relied upon the legality of the proceedings in their purchase of the orders.

2. That the declaration does not allege that defendant owed any duty to the plaintiffs in the premises.

3. That it was of no concern to the plaintiffs whether the proceedings were in strict accordance with law or not.

4. The declaration does not state whether or not the board of supervisors would have ordered the spreading of the tax, had all of the proceedings been in strict accordance with the statute.

5. That the declaration shows that if plaintiffs have suffered any injury it was caused by the action of the board of supervisors.

6. That the declaration does not charge any contract relations between plaintiffs and defendants, and is informal and insufficient in law.

From the declaration, we deduce the following state of facts:

1. A lawful petition was filed with defendant's predecessor for the cleaning out of an existing drain.

2. The first order of determination may reasonably be construed as complying with the prayer to clean out the drain and to straighten it across Loomis' land.

3. The final order was an order to clean out the drain, supplemented by a determination that the drain be straightened across Loomis' land as determined by the first order.

4. The letting was advertised merely as a cleaning out of the drain, bids were taken upon this basis, and section 1 of the drain (which was the one included in the proposed straightening) was let to Swan Johnson for $266.40. The contract was to construct the drain according to the survey which showed the line as straightened.

5. The right of way across Loomis' land not having been acquired, no attempt to straighten the drain was made, and Johnson having cleaned out the old drain, the defendant accepted this as a compliance with the contract, though it was worth less than to have straightened the drain.

6. No other contract has been performed, yet the defendant did not declare said contracts forfeited or take steps to relet the same during the time that he remained drain commissioner.

7. The board of supervisors has refused to spread the tax.

8. The plaintiff owns by assignment orders amounting to a few dollars, issued to persons for services in the preliminary survey, apparently.

9. It does not appear that he has made any effort to collect them from any one.

Apparently the only cause of complaint is that Swan Johnson's contract to clean out the drain according to survey was in effect an agreement to construct a new drain across the Loomis lot, which the parties to it had not a right to make, or Johnson to perform, and which he did not perform, and while he did perform the job of clearing out the old drain, defendant's consent or contract to permit this and accept the same as a compliance was a fraud upon other bidders and persons assessed, who are not complaining of it, because it was not worth as much as the work contracted for, and invalidated the proceedings, which made it proper for the board of supervisors to refuse to spread the tax.

We are able to say that the drain commissioner acquired jurisdiction to clean this drain, that no landowner whose land was to be taken (if there were such) and no landowner assessed for benefits is shown to have questioned the proceedings in any way. The only reason indicated for the refusal of the board to authorize the spreading of the tax, is the claim that an excessive price for Johnson's work is included in the computation, unless it be defendant's omission to declare other contracts void and relet the jobs, which, of itself, would not justify a refusal to order the spreading of the tax.

It does not appear that Johnson has been paid, or that if he had it would be any reason for a refusal of the board to order the tax to be spread. Counsel for plaintiff rely upon the case of *Kenyon* v. *Board of Sup'rs of Ionia*

*Co.*, 138 Mich. 544. There the record showed that the board refused to order the tax to be spread because of proceedings "fatally defective," which did not occur until more than ten days had elapsed after the final order of determination, and that there was no other remedy against an illegal assessment. A mandamus was refused, inasmuch as no work had been commenced to construct the drain. So far as the percentage of benefits is concerned, every person subject to assessment in this case was concluded by the proceedings, no appeal having been taken. Moreover, the work has been commenced, and furthermore there is no indication that any one having the right to do so has questioned the validity of the computation or assessment as made or requested the board not to order the spreading of the tax, which the defendant caused to be computed and spread over the district in his special roll and had the board ordered the same to be spread, no person owning lands assessed could successfully question his assessment upon the facts shown by this record, and if he could, the only relief that he could obtain, would be a reduction of the computation, because of the inclusion of some unknown fraction of $266.40, improperly included in the computation of the amount to be raised.

This new computation would necessarily result in but an infinitesimal reduction upon each person questioning it, and none upon others, and the defendant would not be affected by it, both because a corresponding or greater reduction should then be made in the amount to be paid Johnson, and because presumably the sum of 10 per cent. provided by the statute might be sufficient to cover any deficiency.

At the time this defendant surrendered his office to his successor, January 1, 1904, there was a valid proceeding to clean out the drain, a valid assessment of percentages of benefits, and a computation which at the most was slightly excessive, but of which no one, certainly no interested party, is shown to have complained. The supervisors at the preceding October session had refused to author-

ize the spreading of the tax—apparently without just cause. The commissioner was not responsible for this, and has since January 1, 1904, had no authority in the premises. We are of the opinion that the declaration does not state a cause of action. It is unnecessary to discuss other questions.

The judgment is affirmed.

MOORE, CARPENTER, and McALVAY, JJ., concurred.

OSTRANDER, J. I concur in affirming the judgment, but upon the ground that it does not appear from the declaration that the alleged misbehavior of the drain commissioner in any way concerned the plaintiffs. 23 Am. & Eng. Enc. Law (2d Ed.), p. 379 (*g*); Cooley on Torts (1st Ed.), p. 379; *Moss* v. *Cummings*, 44 Mich. 359.