YEOMANS v. BOARD OF SUPERVISORS OF IONIA COUNTY.

1. Trial—Mandamus—Findings.
    Findings of fact made on the trial of issues framed in mandamus are taken as true in appellate proceedings.

2. Mandamus—Laches—Claims Against Counties.
    Where relator in mandamus to compel the board of supervisors to levy a tax to pay for services rendered in the establishment and construction of a drain, had delayed enforcing his

order or claim for seven years, having knowledge or notice that the proceedings to establish the drain had been declared void in a former cause, the delay constituted laches fatal to the claim.

3. SAME—NOTICE—PUBLIC OFFICERS.

Knowledge obtained by relator as a member of the board of supervisors, relative to pending litigation attacking the validity of drain proceedings, should be treated as notice to him personally so as to charge him with the duty of acting promptly in the enforcement of any rights arising out of said proceedings.

Certiorari to Ionia; Davis, J. Submitted January 28, 1913. (Calendar No. 25,362.) Decided March 21, 1913.

Mandamus by Walter Yeomans against the board of supervisors of Ionia county to compel respondent to levy an assessment to pay a drain construction order. An order allowing the writ is reviewed by respondent on writ of certiorari. Reversed.

*John Nichol* and *R. A. Hawley*, for relator.

*James Scully* and *Frank C. Miller*, for respondent.

STEERE, C. J.  This is a proceeding in certiorari, brought here by respondent, to review the action of the circuit court of Ionia county, allowing a writ of mandamus to compel respondent, at its October session, 1912, to order spread upon the tax rolls of the townships of Campbell and Boston, in said county, a certain tax, assessed by the county drain commissioner prior to the October, 1911, session of said board, to defray the costs of laying out and constructing a certain drain, called the "Campbell Creek drain," as apportioned and assessed against said townships by said drain commissioner, for benefits at large, and the several amounts apportioned against the tracts and parcels of land in said townships, as described in the special assessment rolls alleged to have been filed by the county drain commissioner in the year 1911.

Relator filed his petition for said writ of mandamus on

the 16th of October, 1911, alleging that he held an order, by purchase, for the sum of $46.50, issued to David C. Crawford for services in the survey of said drain, which order was unpaid, and for the payment of which no provision had been made, setting forth in detail various proceedings leading up to, and resulting in, an assessment of the tax in question, and charging a refusal of said board of supervisors to act favorably thereon.   To this petition respondent, on November 6, 1911, made and filed a lengthy answer, admitting certain of the allegations in relator's petition, denying others, reciting a chronological history of the Campbell Creek drain, with a statement of many facts and reasons in justification of its refusal to act affirmatively in the matter and to order the alleged drain tax spread as demanded.

On January 29, 1912, relator, in preparation for trial, presented to the court 56 issues framed on the petition and answer, which were later adopted by the court as the issues to be submitted to and passed upon by the court or jury at the trial.   The case was brought on to be tried before a jury in the circuit court of Ionia county on June 28, 1912, and the trial progressed regularly in that form until taking of testimony was concluded.   Thereupon, apparently by some arrangement between court and counsel, the details of which are not fully stated, the jury was discharged and the case taken under advisement by the court.   In the introduction to his finding of facts the court says:

" It having been conceded in open court at the close of the evidence by counsel for relator and respondent that there was no question arising in the cause for a jury to determine, said jury was discharged by the court, and, a demand for the special findings of fact and law having been duly made in this case by the relator, the court finds the facts and law to be as follows:"

The findings of fact and conclusions of law by the court were filed on September 17, 1912.   They follow in numerical order and dispose of the issues which had been previously framed and adopted.   Matters stated in the petition

or answer, but not denied, and upon which no issues were framed, are not reviewed. In disposing of the legal questions involved, these also are to be taken as true.

The findings occupy over 12 pages of the printed record. Many of the facts there found appear in the statement of *Nash* v. *Kenyon*, 151 Mich. 152 (115 N. W. 45), and need not be repeated now. That litigation involved, up to a certain point, the same proceedings relative to the Campbell Creek drain which are in controversy here. In that case Nash & Son, plaintiffs, held certain drain orders issued against said drain, and, on demurrer to their declaration, it was found, from the record, that the board of supervisors had refused without just cause to order a tax for payment of the same spread on the rolls of the proper townships. This court held plaintiffs could not maintain an action for damages against defendant Kenyon, who, as drain commissioner, issued the orders, the action being brought on the ground that, by reason of the illegality of the drain proceedings, malfeasance in office was imputable to him, and that he was in consequence personally accountable for resulting damages; and the demurrer was sustained. That case was begun September 13, 1905, in Ionia county, and was finally decided by this court February 15, 1908.

The Campbell Creek drain was originally laid out and established in 1873 and 1874, and the proceedings detailed in *Nash* v. *Supervisors, supra*, which are also involved here, primarily arose from a petition, filed with the commissioner in 1901, for cleaning out said drain. It is set up in respondent's answer, and appears undisputed in this record from exhibits made a part of said answer, that in November, 1903, Kenyon, the then drain commissioner, with two men named Emery and Johnson, as relators, applied to the court of Ionia county for a writ of mandamus to compel the board of supervisors to take the same action now sought to be compelled. Walter Yeomans, relator here, was then chairman of the board of supervisors, and as such signed respondent's answer, setting forth the reasons

why said board should not spread said tax for the Campbell Creek drain, being the same reasons set forth in this answer. The order for $46.50 which relator here is seeking to collect had then been issued, and its validity was necessarily involved in that proceeding. The same drain proceedings were in controversy, the same points raised, and the same alleged tax litigated as before us now; and, after full hearing, the side which Yeomans then represented prevailed, the application for mandamus being denied. No appeal was ever taken from said judgment, and it yet stands unreversed in that court, adjudicating invalid the proceedings upon which the order relator is seeking to collect is based.

It is alleged in respondent's answer, and not denied, that relator was the owner of the order for $46.50, which he is now seeking to collect, when, in 1903, as a member of the board of supervisors, he denied the validity of the proceedings on which it is based, and actively assisted in successfully contesting the same. Said order was issued by the drain commissioner October 6, 1902, and fell due March 15, 1904. He, or those from whom he obtained it, and with whom he was in privity by successive ownership, held this order during all the intervening years, up to the commencement of this mandamus case in October, 1911, without taking any steps to collect or enforce the same. He knew as early as 1903 the attitude of respondent in relation to it. Conceding that the judgment rendered in the mandamus case in 1903, sustaining the answer which relator signed as chairman of the board of supervisors, does not now raise an estoppel by judgment against his taking a contrary position in this mandamus case, because he acted in a representative capacity then and acts in a personal capacity now, he is nevertheless the same individual, and his participation, though official, in that case, gave him familiar knowledge of all the facts involved and issues raised. He then knew that the board refused to authorize the tax in question, and why. He inevitably had, and carried, that knowledge with him as a private

citizen, no matter how he came by it. With that knowledge, he, as a private citizen, stood by and acquiesced in that refusal for eight years thereafter, though the courts were open to him to personally assert his rights and enforce his claim at any time after his order fell due in the spring of 1904.

Mandamus is a discretionary writ, and has been said to often partake of the nature of a bill in equity for specific performance, wherein stale claims are not favored, and nonaction for a period covered by the statute of limitations imports abandonment, and imputes laches to the dilatory suitor. Whatever its form, this proceeding is in purpose but an action to collect a debt. Mandamus proceedings for that purpose are not different from any other suits. *Hosier* v. *Higgins Township Board*, 45 Mich. 340 (7 N. W. 897). Following by analogy the statute of limitations under former decisions of this court, we think relator's claim has become stale by inaction, and its enforcement is barred by laches. In *People, ex rel. Owen*, v. *Lincoln Township Board*, 41 Mich. 415 (49 N. W. 925), denying a writ of mandamus, this court said:

"Where six years have elapsed since the issuing of township orders for work and labor performed, and payment was refused nearly that long ago, they cannot be enforced. The laches is too great."

In *Avery* v. *Township Board*, 73 Mich. 622 (41 N. W. 818), it was held that an unexplained delay of over six years in demanding payment of highway or township orders, or instituting proceedings to collect the same, amounts to such laches as to bar relief.

As these conclusions dispose of the case, it becomes unnecessary to consider the many other interesting questions raised.

The judgment is reversed.

Moore, McAlvay, Brooke, Kuhn, Stone, Ostrander, and Bird, JJ., concurred.