SAMUEL H. SULLIVAN *vs.* F. E. ATTEAUX & CO., INC.

Suffolk.   October 3, 1933. — December 1, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Contract,* Construction, For sale of land, Performance and breach. *Deed,* Warranty. *Waiver.*

An agreement in writing by a corporation owning land to convey it to a purchaser by "a good and sufficient corporation deed" entitled the purchaser to receive a good marketable title, which was a title free from encumbrances beyond a reasonable doubt, but it did not give him a right to receive a good record title free from the possibility or suspicion of a defect.

A real estate title not good on the record may be shown, by evidence independent of the record, to satisfy the requirements of a marketable title.

Attachments which, on the date fixed for conveyance, were of record in a registry of deeds as encumbrances upon the land to be conveyed by the corporation in accordance with the agreement above described, afterwards were shown to be of no effect because an action at law in which one was made was not entered in court and a suit in equity in which the other was made had been dismissed by a final decree. *Held,* that such attachments did not constitute defects in the corporation's title and did not prevent such title from being marketable.

On the day set for conveyance under the agreement above described, the corporation tendered a deed as required, but the purchaser stated "that he could not go through because he was unable to raise the balance of the purchase money"; and the attorney for the corporation replied, "this will have to end it, you have defaulted on the deed and agreement." *Held,* that

(1) The conduct of the purchaser was an unqualified and absolute refusal to accept the deed and was a waiver of his right to object to the corporation's title on the ground that it had failed to notify the commissioner of corporations and taxation in conformity with G. L. (Ter. Ed.) c. 63, § 76, of the "proposed sale or transfer" within five days before the sale or transfer;

(2) The purchaser could not afterwards maintain an action at law to recover a deposit made with the corporation at the time when the agreement was made.

*It seems,* that an excise tax assessed upon the corporation, if such there had been, would have been included within the limitation of a provision in the agreement above described, that the deed to be given should be "subject to all unpaid taxes and tax titles."

CONTRACT. Writ dated October 8, 1928.

In the Superior Court, the action was heard by *Greenhalge,* J., without a jury. Material facts found by him are stated in the opinion. The judge found for the defendant and reported the action for determination by this court.

*B. J. Killion,* (*S. H. Sullivan* with him,) for the plaintiff.

*G. W. Howe,* for the defendant.

PIERCE, J. This is an action of contract, in two counts, to recover a deposit of $4,075 under an agreement on the part of the plaintiff to buy and on the part of the defendant, a Massachusetts corporation, to sell real estate owned by the defendant in the city of Boston. At the trial both parties waived a trial by jury. The judge found for the defendant and at the request of the parties reported the case to this court on the stipulation of the parties that if, upon the whole case and upon the law, the finding of the judge was erroneous, then judgment is to be entered for the plaintiff in the sum of $5,093.75, otherwise judgment is to be entered for the defendant.

The facts found are in substance as follows: On August 16, 1928, after an auction sale by the defendant, certain real estate owned by the defendant was "knocked down" to the plaintiff. A printed agreement of sale was drafted on

a printed form and signed by him and his wife. This agreement is annexed to the report. In it, after the words "Subject to taxes for the year 1928," were written in the handwriting of an agent of the defendant the words, "which are to be adjusted as of the date of passing papers." The plaintiff deposited "in the hands of the auctioneer" a savings bank book showing a deposit of $4,000 which, with accumulated interest of $75, amounted to $4,075. This book was later presented to the bank, the interest added, and the sum of $4,075 turned over to the defendant.

It was provided in the agreement that title was to pass on August 31, 1928; this agreement, at the request of the plaintiff, was extended to September 12, 1928. On or about August 23, 1928, the plaintiff received a letter from an attorney representing the defendant which reads as follows: "I have prepared a deed of the Atteaux estate, and it occurs to me that you might like a copy of this deed before its execution for inspection and approval . . . . With reference to the adjustments, I will say that we are contemplating applying for a reduction in the assessed valuation for the purpose of obtaining a partial abatement of taxes for this current year. The assessed valuation of $188,000 seems to be entirely out of proportion. We believe that an application should be made for this abatement. If an abatement should be granted, then that ought to result in a proportionate reduction in the allowance we are to make on the tax adjustment. Just think that over and let me know how you feel in regard to it." On or about August 30, 1928, the day the agreement for extension was signed by the defendant and the plaintiff, the plaintiff received a letter from the defendant's same attorney which reads as follows: "With the agreement extended to September 12, you will have time to secure a mortgage somewhere else. We shall on that day expect to deliver the deed and receive the balance of the consideration without any further extension as to time." On September 12, 1928, the parties met "and there a deed was tendered to the plaintiff who said that he couldn't go through because he was unable to raise the balance of the purchase money"; and the attor-

ney for the defendant replied, "this will have to end it, you have defaulted on the deed and agreement." On the afternoon of September 12, 1928, the plaintiff's son, an attorney at law, saw an expert conveyancer and as a result of a conference with that attorney went to the office of the commissioner of corporations and taxation and found that the defendant had given no notice as required by G. L. (Ter. Ed.) c. 63, § 76; he also went to the Suffolk registry of deeds and found two attachments of record, (1) an attachment made on August 30, 1901, in a suit in equity filed in the Superior Court for the county of Suffolk, by The Somerville National Bank against F. E. Atteaux & Company, and (2) an attachment made by writ returnable to the District Court of the United States for the District of Massachusetts on November 19, 1917, by the United States of America against F. E. Atteaux & Co., Inc. Certified copies of the above were introduced and offered in evidence by the plaintiff. On September 13, 1928, the day after the date set for passing papers, the plaintiff, accompanied by his son, went to Mr. Buffum's office (the attorney for the defendant), and said to him that the defendant corporation was unable to give a deed in accordance with the agreement and asked for the deposit money back and gave as his reasons the following: (1) "The failure to give notice required under G. L. c. 63, § 76"; and (2) "The fact that there were two outstanding undischarged attachments of record against this property." Mr. Buffum said that he wanted a little time to look them up, and if he found they were as represented to him, he would return the deposit. On September 20, 1928, Mr. Buffum wrote the plaintiff's son that he was to be out of town a few days, but on his return would discuss the matter with him. The discussion took place a short time later. Mr. Buffum then stated that he had looked up the attachments and found that one of them was a nonentry, and the other had been put on the inactive list and discharged automatically, and that, in his opinion, they did not amount to anything. He said that, in regard to the notice to the commissioner of cor-

porations, he did not think it amounted to anything, all the taxes owed by the corporation had been paid, and it did not owe the State anything; he felt that it did not have to comply with the notice.  He further stated that the defendant did not have to and would not return the deposit.  It was agreed that the commissioner of corporations and taxation was never notified by the defendant of this proposed sale.

It appeared from the commissioner of corporations and taxation's records that an excise tax of $422.73 was assessed and billed to the defendant under date of September 20, 1928.  The plaintiff had heard something about the attachments and failure to give notice before September 12, 1928.  The fact that the excise tax was due was not discovered and known by the plaintiff until February or March, 1932, when, upon further examination by the plaintiff's son of the records of the commissioner of corporations and taxation, the same was made known to him. "It was agreed that the proposed sale from the defendant to the plaintiff was 'other than in the usual course of business.'"  No mention by the plaintiff of the attachments, or failure to notify the commissioner of corporations and taxation was made to the defendant, or its attorney, at any time before the conference at Mr. Buffum's office on September 13, 1928, and the plaintiff gave as his only reason for not carrying out his agreement his inability to raise the balance of the purchase money.

The defendant introduced in evidence two certificates showing that the suit in equity by The Somerville National Bank against F. E. Atteaux & Company, on which the real estate attachment was made, was, "on the eighteenth day of December, 1920, dismissed by a general decree entered on the equity docket of the court," and that "the action of the United States of America *v.* F. E. Atteaux & Co., Inc., on which a real estate attachment was made, was never entered."  Subject to the exception of the defendant, the judge ruled that the provision in the agreement, "premises to be conveyed by a good and sufficient corporation

deed, subject to any and all unpaid taxes and tax titles,"
did not include the excise tax, levied or to be levied, at the
time of the execution of the agreement.

The agreement of the defendant to convey the land by "a
good and sufficient corporation deed" entitled the plaintiff
to receive a good marketable title, that is, a title free from
encumbrances beyond a reasonable doubt, but did not give
him the right to receive a good record title free from the pos-
sibility or suspicion of a defect. *Morse* v. *Stober,* 233 Mass.
223. *Cleval* v. *Sullivan,* 258 Mass. 348. *Rubenstein* v.
*Hershorn,* 259 Mass. 288, 294. A title not good on the
record may be shown by evidence independent of the record
to be marketable beyond reasonable doubt. *Aroian* v.
*Fairbanks,* 216 Mass. 215, 220. *O'Meara* v. *Gleason,* 246
Mass. 136, 138. It is plain that the attachments in the
principal case, one of which was a nonentry and the other
was dismissed by a general decree entered on the equity
docket of the Superior Court on December 18, 1920, did not
constitute such encumbrance or defect in the defendant's
title, and did not prevent such title from being marketable
beyond a reasonable doubt. The plaintiff contends that
the failure of the defendant to notify the commissioner of
corporations and taxation in conformity with G. L. (Ter.
Ed.) c. 63, § 76, of the "proposed sale or transfer" within
five days before the sale or transfer "accelerates the time
for assessment as well as for collection" of the excise tax
on September 20, 1928. *Springdale Finishing Co.* v. *Com-
monwealth,* 242 Mass. 37, 42. Assuming, as the plaintiff
contends, that the excise tax was an encumbrance, or
would have been an encumbrance had there been a sale or
transfer without notification five days before the proposed
sale or transfer under the provision of G. L. (Ter. Ed.) c. 63,
§ 72, and that such "warrant shall not run against the body
of any person nor shall any property of such delinquent
corporation . . . be exempt from seizure and sale thereon,"
we think the right of the Commonwealth under the statute
to follow the land sold is within the limitation of the agree-
ment that the premises to be conveyed are "subject to any
and all unpaid taxes, and tax title if there be any, . . .

15 . . . days from day of sale given for examination of title." If the power to seize the premises under warrant for the payment of the excise tax is an encumbrance and does not fall within the limitation of the agreement, then we think the ruling "that the plaintiff, having declined to proceed in the transaction, was not entitled to recover" was clearly right. On September 12, 1928, the plaintiff refused to accept the deed tendered by the defendant on the sole ground that he could not raise the balance of the purchase money, he at that time having "heard something about the attachments and failure to give notice before September 12, 1928." This conduct of the plaintiff under the decisions in this Commonwealth was a waiver of his right to object to the title later. It was not necessary that the defendant come with the deed, and certificates showing no record cloud on the title, and with a receipt from the Commonwealth of the excise tax which was not payable until September 20, 1928, if the plaintiff refused to go on for the reason that he could not pay the balance on September 12, 1928. The plaintiff's refusal to take the deed was unqualified and absolute, not founded upon the existence of the alleged encumbrances or upon a doubt of the defendant's ability to remove such if necessary. *Carpenter* v. *Holcomb*, 105 Mass. 280, 285, 286. *Brown* v. *Davis*, 138 Mass. 458. *Pead* v. *Trull*, 173 Mass. 450. *Cave* v. *Osborne*, 193 Mass. 482. *Smith* v. *Greene*, 197 Mass. 16. *Cleval* v. *Sullivan*, 258 Mass. 348, 351. *Moss* v. *Old Colony Trust Co.* 246 Mass. 139, 150.

We find no error in the proceedings in the Superior Court. It follows, in accord with the stipulation of the parties, that judgment should be entered for the defendant; and it is

*So ordered.*