EDWARD P. OLIVER & another, trustees, *vs.* GEORGE P. POULOS & another.

Suffolk.   May 5, 1942. — September 9, 1942.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Equity Jurisdiction*, Specific performance, Laches. *Contract*, For sale of real estate. *Laches. Equity Pleading and Practice*, Question of law or fact, Parties. *Evidence*, Relevancy, Public record. *Trust*, Vacancy in office of trustee. *Real Property*, Sale, Examination of title.

Whether the plaintiff in a suit in equity for specific performance of a contract to purchase real estate was able to convey the kind of title required by the contract was a question of law to be determined on the facts bearing on the plaintiff's title.

The vendor in a contract for the sale of real estate had "a good and clear record and merchantable title . . . free from all encumbrances" as required by the contract, and was entitled to specific performance of the contract, although, in a deed to one of his predecessors in title many years before, there was a recital that the premises were subject to a mortgage running to a named person and there was of record no such mortgage nor any discharge thereof, where a conclusion was justified on the records in registries that the mortgage so recited was the same as a contemporaneous mortgage of the premises to one of a different given name, which did appear of record and appeared to have been discharged of record.

In examining the title to real estate and in determining the question whether the vendor in a contract for the sale thereof has a good record title, pertinent probate records may be considered together with those of the registry of deeds.

The mere fact that, in a six months' period between the time fixed for passing papers in a contract for the sale of real estate and a time when the vendor brought suit for specific performance, the vendee suffered a substantial adverse change in his financial condition, not shown to have resulted from any conduct of the vendor, would not require a finding of laches.

A suit in equity for specific performance of a contract made by three trustees under a will might be maintained by two of them pending filling a vacancy caused by the death of the third, although the testator intended that there should always be three trustees and directed survivors to make application for a filling of a vacancy, and there had been no such application by the two or by any other interested party.

BILL IN EQUITY, filed in the Superior Court on January 3, 1940.

The suit was heard by *Buttrick,* J.

*M. Caro,* for the defendants.

*R. Wait,* for the plaintiffs.

DOLAN, J. This is a bill in equity for specific performance of a written agreement in which Philip Stockton and the other trustees under the will of Amos Lawrence agreed to sell, and the defendants to purchase, certain real estate situated at 1838–1844 Washington Street, and 2 Flagg Street, in the city of Boston. At the trial a suggestion was filed of the death of Stockton, and the suit was prosecuted to final decree by the surviving trustees, the present plaintiffs. The case comes before us upon the defendants' appeal from the final decree entered by direction of the judge, ordering the defendants specifically to perform the agreement by accepting a deed of the premises and making payment of the agreed purchase price with interest from the date provided in the agreement for conveyance of the premises, together with costs. The decree also contained a provision that payment could be made pro tanto by a note secured by mortgage of the premises if accepted by the plaintiffs.

The evidence is reported, and the judge filed "Finding of the Court and Order for Decree." This statement contained findings that the agreement in question was executed as of the date of May 15, 1939; that the purchase price agreed upon was $5,000 of which $100 was then paid by the defendants; that the balance was to be paid "on or about June 20, 1939 [the time fixed for conveyance], afterwards extended by mutual consent to July 20, 1939." The defendants set up in their answer inability of the plaintiffs to perform the contract in accordance with its terms, and pleaded laches on the part of the plaintiffs in bringing the bill. The judge found that the plaintiffs were willing and able at all times to give the defendants a proper deed of the property conveying "a good clear merchantable title free from all encumbrances except the provisions of the local zoning law [no issue arises in the case as to zoning

laws], . . . that the . . . [defendants] were so notified, . . . [that] on the 20th of July [1939] the . . . [plaintiffs] in accordance with the terms of the agreement had an executed deed ready to deliver . . . [at the place fixed therefor, and that the plaintiffs] were not guilty of laches in the bringing of the bill." While the judge stated that these findings "constitute the material facts pertinent to the case" he made no findings relative to the history of the title to the property which, the defendants contend, discloses that the plaintiffs are not able to convey to them "a good and clear record and merchantable title" to the premises as provided in the agreement.

The evidence having been reported, it is our duty, under the familiar rule, to examine it and to decide the case according to our own judgment, giving due weight to the findings of the judge whether expressly made or implied in the final decree entered by him. Such findings will not be reversed unless plainly wrong. In so far as the findings by the judge are solely of facts such as those found with relation to the execution and terms of the agreement, the readiness of the plaintiffs to perform, and the refusal of the defendants so to do, they are supported by the evidence and so must stand.

The finding of the judge, however, that the plaintiffs were willing and "able" at all times to convey a "good clear merchantable title," we think is a conclusion of law to be drawn from the facts concerning the title of the plaintiffs, as to which we must look to the evidence. The material facts so disclosed follow: The premises in question were conveyed to the plaintiffs' predecessors as trustees by deed dated October 1, 1872, which was duly recorded. They were recited to be conveyed subject to a mortgage to N. B. Shurtleff for $25,000 due March 27, 1874, which the grantees assumed and agreed to pay. There was no record of any mortgage of the premises to N. B. Shurtleff nor of any discharge thereof. There was, however, of record a mortgage of the premises to Samuel A. Shurtleff due March 27, 1874, and of its discharge. That mortgage payable in five years was given on March 29, 1869, to Samuel A.

Shurtleff by George L. Storer, who was then the owner of the premises; he and his wife were the grantors in a deed of the premises given by them, in 1869, to trustees under the will of Israel Thorndike, who in turn conveyed the same to the plaintiffs' predecessor trustees in 1872. The discharge of that mortgage dated March 27, 1874, ran from the executor and trustee under the will of Samuel A. Shurtleff to the plaintiffs' predecessors as trustees under the will of Amos Lawrence. The deed from the trustees under the Thorndike will recited as the consideration for the conveyance $45,000. The second account of the trustees under his will shows the receipt of $20,419.47 for the sale of the equity in the premises. The facts bearing on the history and state of the title as shown by public records were elicited from the testimony of a recognized conveyancer who testified that in his opinion the mortgage to Samuel A. Shurtleff was the same mortgage as that referred to in the deed to the plaintiffs' predecessors as a mortgage to N. B. Shurtleff.

The defendants contend that the evidence does not support a conclusion that the plaintiffs are able to convey a "good and clear record and merchantable title . . . free from all encumbrances." In support of this contention they argue, first, that the testimony of the conveyancer that in his opinion the plaintiffs had a good and clear merchantable title was improperly admitted over their objections and exception. It is unnecessary to discuss this exception since, even if the opinion of the conveyancer be excluded from consideration, we reach the same conclusion upon the facts disclosed by the evidence. The same is true as to the opinion expressed by the conveyancer that the Samuel A. Shurtleff mortgage and the N. B. Shurtleff mortgage were one and the same, namely, a mortgage to Samuel A. Shurtleff.

It is settled that, in order to maintain a bill for specific performance of an agreement to purchase land, the plaintiff must show that the title tendered by him is good beyond a reasonable doubt, that is, a considerable, rational doubt such as would cause a prudent man to pause and hesitate

before investing his money, and that where "questions as to the validity of a title are settled beyond reasonable doubt, although there may be still the possibility of a defect, such mere possibility will not exempt one from his liability to complete the purchase he has made." *First African Methodist Episcopal Society* v. *Brown,* 147 Mass. 296, 298, 299, and cases cited. *Conley* v. *Finn,* 171 Mass. 70, 72. *Sullivan* v. *F. E. Atteaux & Co. Inc.* 284 Mass. 515, 520. See *Mahoney* v. *Nollman,* 309 Mass. 522, 526. Viewing the facts disclosed by the evidence in the light of these principles we think that a conclusion is justified that the plaintiffs are able to convey to the defendants a title that is good beyond a reasonable doubt. The defendants, however, stress the fact that under the terms of the agreement in question the plaintiffs agreed to convey a good and clear "record" and "merchantable title . . . free from all encumbrances . . ." and argue, citing *O'Meara* v. *Gleason,* 246 Mass. 136, 138, that a "good marketable title" is not the same as "a good and clear record title." But in that case the court defined a good and clear record title free from all encumbrances to mean "a title which on the record itself can be again sold as free from obvious defects, and substantial doubts." In the present case we think that the chain of title shown in the record is one that is free from obvious defects or substantial doubts. No mortgage running to N. B. Shurtleff is disclosed by the records in the registry of deeds as affecting this property throughout its history, except as reference is made to such a mortgage in the deed by which the plaintiffs' predecessors as trustees originally acquired the property. The title of their predecessors in turn shows the mortgage in question by date and due date to be one to Samuel A. Shurtleff, and, in turn, the records of the registry show that mortgage to have been given by one of their predecessors in title, Storer, to Samuel A. Shurtleff, and, finally, the discharge of that mortgage to the former trustees of the trust now involved by the executor and trustee under the will of Samuel A. Shurtleff in 1874, nearly seventy years ago. This mortgage is further identified as the one involved by the probate records of the Thorndike estate,

which, contrary to the contention of the defendants, were proper to be considered as public records (see G. L. [Ter. Ed.] c. 215, § 37), together with those of the registry of deeds relating to the premises in question. The records of one of necessity supplement and clarify those of the other in all proper examinations of the title to real property. The chain of title set forth in the record exhibits no real defect or substantial doubt in the title of the plaintiffs to the premises in question, and in its light the misdescription in the deed to the plaintiffs' predecessors as trustees is palpably erroneous and does not constitute an obvious defect in the title, but is immaterial. See *Boston & Northern Street Railway* v. *Goodell*, 233 Mass. 428, 436.

The defendants further contend that the judge erred in excluding certain evidence offered by them tending to show that when the present suit was brought a substantial adverse change in their financial condition had taken place. They assert that this evidence was competent on the question of laches. There was no harmful error in its exclusion. The defendants failed to carry out the agreement in question at the time fixed, although there was evidence that they were then financially able to do so. The present suit was brought within six months of that time. There was no evidence offered by the defendants to show that the alleged change in their financial condition in the interim was due to any conduct of the plaintiffs. Laches is a question of fact. It is as fully open before us as it was before the judge. *Dodge* v. *Anna Jaques Hospital*, 301 Mass. 431, 436, 437. The excluded evidence, however, even though we consider it as if it had been admitted, would not support a finding that the plaintiff had been guilty of laches in bringing the bill. See *Cohen* v. *Segal*, 253 Ill. 34.

The defendants have also argued that, since no trustee has been appointed in place of Stockton, who has deceased, the present suit cannot be maintained. The testator named three trustees in his will and provided as follows: "If any, or either of my trustees shall die, or refuse to accept, or shall relinquish said trust or be removed therefrom, the surviving or other trustees or trustee shall, by any writing

subscribed by them or him, nominate some other suitable person or persons to be approved and appointed by the said Judge of Probate to be trustee or trustees in place of the trustee or trustees so dying, or from any other cause ceasing to be a trustee or trustees. And in default of such appointment being made as aforesaid, whenever the same shall be necessary, I direct that a new trustee or new trustees shall in every such case be appointed by said Judge of Probate or by one or more judges of the Supreme Judicial Court of said Commonwealth. And the new trustee or new trustees, appointed in either mode as aforesaid, shall have the same power, right and interests touching the trust premises and be subject to the same duties and liabilities, as if herein appointed trustee or trustees." ,Under these provisions it seems manifest that it was the intention of the testator that there should always be three trustees under his will, and accordingly it would be the duty of the appropriate court to appoint a trustee to fill the vacancy caused by the death of Stockton upon the application of any person interested in the trust estate. *Massachusetts General Hospital* v. *Amory,* 12 Pick. 445, 448, 449. Am. Law Inst. Restatement: Trusts, § 108, comment b. 1 Scott, Trusts, § 108.1. Nevertheless, we are of opinion that the surviving trustees may act as such trustees "at law or in equity" until the vacancy caused by the death of Stockton shall be filled, even although there is delay on the part of those interested in making application for such an appointment, as provided in the will of the testator. *Dixon* v. *Homer,* 12 Cush. 41, 43. *Hammond* v. *Granger,* 128 Mass. 272, 277. It follows that the present plaintiffs may maintain the bill.

*Decree affirmed with costs.*