LILLIAN J. MISHARA *vs.* CHARLES M. ALBION & another.

Middlesex. October 7, 1960. — January 11, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Contract,* For sale of real estate, Waiver. *Real Property,* Marketability, Indefinite reference in deed. *Deed,* Indefinite reference. *Evidence,*

Mishara *v.* Albion.

Presumptions and burden of proof. *Waiver.* *Practice, Civil,* Exceptions: whether error harmful. *Error,* Whether error harmful.

A contract for sale and purchase of real estate not specifying the quality of the title to be conveyed imported the conveyance of a marketable title, that is, one good beyond a reasonable doubt. [654]

In an action by the buyer against the seller under a contract for sale and purchase of real estate to recover a deposit paid by the plaintiff to the defendant, the burden was on the plaintiff to prove by a preponderance of the evidence that the defendant did not have a marketable title; it was error to rule that the defendant had the burden of proving a marketable title by "the same degree of proof required to convict in a criminal prosecution." [655]

A finding for the defendant was warranted, and a ruling to the contrary was error, on the evidence in an action by the buyer against the seller under a contract for sale and purchase of real estate to recover the plaintiff's deposit with the defendant on the alleged ground that the defendant's title was not marketable by reason of an administrator's deed in the chain of title, given thirty years before, providing that the real estate was then conveyed "subject to any and all easements and restrictions lawfully existing," without a limitation thereof to those of record. [656–657]

The evidence in an action by the buyer against the seller under a contract for sale and purchase of real estate to recover the plaintiff's deposit with the defendant did not require a ruling that the plaintiff, by an unqualified refusal to accept a deed, had waived any right to stand on an alleged defect in the defendant's title making it unmarketable. [660]

The exclusion at the trial of an action of a letter part of which, at least, was admissible was not prejudicial error where that part was duplicated in substance by another letter. [660–661]

CONTRACT. Writ in the Superior Court dated March 7, 1957.

The action was heard by *Rome,* J., who found for the plaintiff. The defendants alleged exceptions.

*Norman B. Silk,* (*Arnold W. Hunnewell, Jr.,* with him,) for the defendants.

*Elliott I. Mishara,* for the plaintiff.

WHITTEMORE, J. This action tried by a judge in the Superior Court without jury in June, 1959, is to recover the sum of $4,500 paid by the plaintiff on September 29, 1956, as a deposit under an agreement of purchase and sale of the premises at 789 Commonwealth Avenue, Newton, owned by the defendant Marion Albion (hereinafter, the defendant). The balance of the purchase price was to be paid

"when title passes by deed, said deed to be delivered on or before January 1, 1957." The agreement did not specify the title to be conveyed. The plaintiff asserts that the defendant was unable to deliver the marketable title which the agreement required. *Aroian* v. *Fairbanks,* 216 Mass. 215, 220. *Grant* v. *Pizzano,* 264 Mass. 475, 480. *O'Meara* v. *Gleason,* 246 Mass. 136, 138.

The marketability of the title depended on the effect of an administrators' deed in the chain of title, recorded on November 22, 1926, which contained a clause reading, "said conveyance being further subject to any and all easements and restrictions lawfully existing in, upon or over said land or appurtenant thereto," and did not limit the easements and restrictions to those "of record."

The judge granted a number of the plaintiff's requests for rulings, including these: "3. The evidence is not sufficient to warrant the court to find for the defendant, Marion Albion. . . . 18. Reference in the defendant's, Marion Albion's, chain of title that it is subject to easements and restrictions not limited to the record is an indefinite reference which creates a reasonable doubt as to questions of fact affecting the marketability of said title. 19. The reference in defendant's, Marion Albion's, chain of title that it is subject to easements and restrictions not limited to the record, is such an encumbrance by insufficiency in the records by which said title may be proven, as to be a defect. . . . 22. The burden of proving her title good beyond a reasonable doubt is upon the seller and such proof must be more than a preponderance of the evidence but is the same degree of proof required to convict in a criminal prosecution."

The judge found for the plaintiff for the deposit and interest.

1. The test of marketability is whether the title is good beyond a reasonable doubt. *Cleval* v. *Sullivan,* 258 Mass. 348, 351. *Conley* v. *Finn,* 171 Mass. 70, 72. *Chauncey* v. *Leominster,* 172 Mass. 340, 346. *Sullivan* v. *F. E. Atteaux & Co. Inc.* 284 Mass. 515, 520. *Oliver* v. *Poulos,* 312 Mass. 188, 191–192. The doubt is "such as would cause a prudent

man to pause and hesitate before investing his money."
*First African Methodist Episcopal Soc.* v. *Brown,* 147 Mass.
296, 298.   The title must be "free from obvious defects,
and substantial doubts."   *O'Meara* v. *Gleason,* 246 Mass.
136, 138.   But a mere possibility of a defect in title will not
relieve the purchaser from liability under his contract.
*Ryder* v. *Garden Estates, Inc.* 329 Mass. 10, 12, and cases
cited.

The statute which in 1959 ended the doubts as to indefinite
references (St. 1959, c. 294, § 1, inserting G. L. c. 184, § 25)
impliedly confirms, in clause (1), that doubts had been
raised by "a recital indicating directly or by implication
that real estate may be subject to restrictions, easements,
mortgages, encumbrances or other interests not created
by instruments recorded in due course."   See Swaim,
Crocker's Notes on Common Forms (7th ed.) p. 596; 34th
Report of the Judicial Council (1958), Pub. Doc. 144, pp.
27–33; Simes and Taylor, Improvement of Conveyancing
by Legislation, Title 9, p. 101.

"The question, whether the defendant's title was clear
. . . was one of fact, . . . with the burden upon the plaintiff
to prove that the defendant's title was not good beyond a
reasonable doubt, and that the defendant did not have a
marketable title."   *Cleval* v. *Sullivan,* 258 Mass. 348, 351.
This being a usual civil case, the state of the title (good or
not good beyond a reasonable doubt) is to be proved by the
preponderance of the evidence.   There is no basis for re-
quiring proof beyond a reasonable doubt, as in a criminal
prosecution.   *Roberge* v. *Burnham,* 124 Mass. 277, 278.
*Grella* v. *Lewis Wharf Co.* 211 Mass. 54, 59.   Both of the
propositions stated in Ruling 22 were therefore in error.
Although in most actions to recover the deposit an indefinite
reference in the record will cast on the seller, as the defend-
ant, the burden of going forward with evidence, and this
evidence will often take the form of a specific negation of
the existence of the interest referred to (see *Sullivan* v. *F.
E. Atteaux & Co. Inc.* 284 Mass. 515; Davis, Conveyancers'
Handbook, § 135), that does not shift the burden of proof.

Mishara *v*. Albion.

Whether the burden has been sustained is of course to be determined on all the evidence.

2. Ruling 3 (''The evidence is not sufficient to warrant the court to find for the defendant'') was also in error, for although the evidence did not require a finding that the plaintiff had failed to prove her case, it permitted such a finding. See *First African Methodist Episcopal Soc.* v. *Brown,* 147 Mass. 296, 298; *Shanahan* v. *Chandler,* 218 Mass. 441, 443–444; *Ryder* v. *Garden Estates, Inc.,* 329 Mass. 10, 12.

The title had been examined in December, 1956, and reported on to the defendants, by a competent and experienced firm of attorneys who specialize in conveyancing. A partner in that firm was called by the plaintiff. When he began his testimony he was unaware of the title examination by his firm. Testifying without the benefit thereof, he stated, subject to the exception of the defendant, the opinion that in 1956 there would be a conveyancing risk in passing the title unless the effect of the deed was overcome by substantial other evidence of record, such as affidavits. ''There would be a substantial number of conveyancers in the bar at present who wouldn't pass it.'' Later the attorney testified that he had found the title opinion letter of January 11, 1957. He then gave as his opinion in respect of the title that set out in the letter, as follows: ''[O]n December 17, 1956, Marion Albion had a sufficient and satisfactory record title . . . subject as follows . . . . It is to be noted [in connection with the indefinite reference] that the conveyance was not made subject to any and all easements and restrictions of record. During the period of our examination we, in fact, found no easements or restrictions of record, at the time said deed was recorded, except certain restrictions imposed in 1923 which have expired in 1953. The likelihood of said administrators having created easements or restrictions affecting said premises by an instrument which for over thirty years has remained unrecorded is in our opinion extremely remote.''[1]

---

[1] The witness added that the title was also subject to two other matters ''which are immaterial for present purposes.''

The attorney further testified that whether he would require other evidence to explain the lack of the words "of record" would depend on the purposes for which he was passing on the title, and whether he would submit other evidence to explain away this deficiency would depend on circumstances. "[A]s was stated in my opinion which I just gave, I would have to point out the risk that would be inherent in accepting such a title." He was not prepared to give an opinion whether under the "rather unusual form of agreement" it would be a good or marketable title.[1]

There was also evidence that the defendant had purchased the house in 1938, and lived there continuously until 1958 and to the best of her knowledge and belief nobody had any rights of way over the property nor had any easements been granted or restrictions placed on the property when she owned it. The deed to her and two intervening deeds, after the 1926 deed, referred to easements and restrictions of record. The 1926 administrators' deed recited that their intestate had taken title to the property by deed dated July 1, 1924.

On this evidence the judge could have concluded that the likelihood of anyone having an easement or the benefit of a restriction by unrecorded deed was remote, and that the possibility was not such that a willing buyer would surely be so advised that he would not take the title. If the administrators, being fiduciaries, had created any easements or restrictions or had knowledge of any created by anyone there was a probability that they would have made express reference thereto. The judge could have given some weight to this as well as to the unlikelihood that the administrators would have created any such. It was not conclusive for the plaintiff that twenty years or more of adverse possession (G. L. c. 260, § 21) was not proved.

We assume that the rule is the same for purposes of a suit to recover a deposit as for a suit for specific perform-

---

[1] The judge stated that the conclusion of law whether a purchaser must take such a title was for the court. See *Luce* v. *Parsons*, 192 Mass. 8, 12–13. As to the relevance of the attorney's testimony on the factual issue of a conveyancing risk, see 90 A. L. R. 614–616.

ance, that is, that the buyer cannot be required to acquire
a probable law suit. *Hunting* v. *Damon,* 160 Mass. 441,
444. *Jeffries* v. *Jeffries,* 117 Mass. 184, 187. Compare
*Chesman* v. *Cummings,* 142 Mass. 65, 67 (a title is not
doubtful if the question is of law only; the court will decide
such an issue). Nevertheless it was not without relevance
to the issue of a title good beyond a reasonable doubt that
there is support in our decisions for the view that the
particular indefinite reference cast no cloud on the title.
See point 3.

3. Such an indefinite reference as that in the 1926
deed as a matter of law may not have been a cloud on the
title. *Dow* v. *Whitney,* 147 Mass. 1, established that a
deed of "all the interest" of the grantor in specifically
described land is good against an unrecorded deed not-
withstanding the possible implication that the interest is
less than full fee, and the words "all the land conveyed to
me by . . . [other deeds of a larger tract] except such por-
tions thereof as I have heretofore sold" do not limit the
prior granting clause of the specific parcel. In *Norman*
v. *Towne,* 130 Mass. 52, 54, it was contended that the recital
in a deed, that it was given in consideration of $1 and other
valuable considerations, was at least constructive notice that
the conveying trustee received no money, and hence con-
veyed in violation of his trust. The court said, "although
the fact . . . may be competent, in connection with other
evidence, to show that the purchaser was by all the circum-
stances put upon inquiry, and therefore is chargeable
with constructive notice, yet the recital alone is plainly
not enough to raise in law a conclusive presumption of
notice. . . . It is said that the recital in a deed of a fact
which may or may not, according to circumstances, be held
to amount to fraud, will not affect a purchaser for valuable
consideration denying actual notice of the fraud. Sugd.
Vend. & Purch. (14th ed.) 546. *Jones* v. *Smith,* 1 Hare,
43." In *Swasey* v. *Emerson,* 168 Mass. 118, 120, Holmes, J.,
speaking of the possibility that notice of a trust might
result from knowledge of the circumstances of outstanding

mortgages and the possibility that the mortgagee might have assigned only the notes, said: "Every grantee of land has notice that there may be a trust outstanding, but he is not called on to inquire about it unless he has notice that there is one"; also: "When the title to land is dealt with, the intent of the registry laws is that purchasers should not be required to look beyond the registry of deeds further than is absolutely necessary."

The form of the original recording acts and their intent against giving an effect to indefinite references are noted in 34th Report of the Judicial Council (1958), Pub. Doc. 144, pp. 27–32.

The cases establishing that notice of a trust is given by the word "trustee" in a deed or stock certificate are distinguishable; the implication is of an existing trust. *Sturtevant* v. *Jaques,* 14 Allen, 523, 526. *Shaw* v. *Spencer,* 100 Mass. 382, 389. *Loring* v. *Salisbury Mills,* 125 Mass. 138, 151. *Smith* v. *Burgess,* 133 Mass. 511, 513. *Bancroft* v. *Russell,* 157 Mass. 47, 49–50. *Blunt* v. *Taylor,* 230 Mass. 303, 305. See *Cleval* v. *Sullivan,* 258 Mass. 348, 352.

*Adams* v. *Cuddy,* 13 Pick. 460, 463, is also distinguishable; it holds that a recorded deed of "all the right and title to the land I have in South Boston" conveys only what the grantor has received and not parted with, so that a prior unrecorded deed of a specific parcel takes precedence over the recorded deed. Accord, *Butrick, petitioner,* 185 Mass. 107, 112.

With the benefit of the title deeds, it is reasonable to conclude that the administrators, with knowledge of the restrictions imposed in 1923, intended only to refer to restrictions and easements of record. Thus the implied representation of the 1926 deed is not necessarily that there are any unrecorded restrictions. It is not logically necessary therefore in giving effect to matters of record to give an effect beyond the record to the indefinite reference in the administrators' deed. 34th Report of the Judicial Council (1958), Pub. Doc. 144, pp. 27–32, and texts cited. We do not decide the issue particularly in view of G. L. c. 184, § 25,

inserted in 1959. See *Hunting* v. *Damon,* 160 Mass. 441, 444. But compare *Jeffries* v. *Jeffries,* 117 Mass. 184, 186–187. As noted, however, the legal standing of the reference as a cloud was relevant to the factual issue before the judge.

4. The judge was not required to find that the plaintiff had waived her right to object to the title by an unqualified refusal to accept the deed and it was not error to rule that there was no waiver. There was testimony that the defendant on December 10, 1956, received a letter from the plaintiff's attorney which claimed that there were several defects of a serious nature in the title and requested that the deposit be returned; also that the defendant was aware that after December 10 an attorney who had represented her in 1938 when she bought the house but did not represent her in 1956 went to the office of the plaintiff's attorney and took some sheets of paper from the title abstract although this was without her authorization. "At that time" the plaintiff's attorney also received a call from the defendant's 1956 attorney. The judge could have inferred that the defendant had notice of the specific defect relied on and that, by the letter from the defendant's attorney of December 28 which referred to the title examination by the conveyancing firm (see point 2 above), the defendant elected to stand on the title. The plaintiff's response of December 28 stated that the plaintiff's attorney disagreed with the view of marketability of the title. Thus the issue was drawn which this action was brought to resolve. Compare *Sullivan* v. *F. E. Atteaux & Co. Inc.* 284 Mass. 515, 521; *Close* v. *Martin,* 208 Mass. 236, 241.

5. There was no reversible error in the exclusion of the letter from the defendant's attorney of December 26, 1956, in which the attorney asserted that the plaintiff's attorney had by telephone said that the plaintiff no longer had use for the property and would seek possible defects as an excuse for nonperformance. This letter was sent in the course of an exchange of letters, some of which were in evidence, and the self serving statements were admissible in the discretion of the judge. *Horowitz* v. *S. Slater &*

*Sons, Inc.* 265 Mass. 143, 150–151. *Bouchard* v. *Bouchard,* 313 Mass. 531, 536–537. Contrast *Kumin* v. *Fine,* 229 Mass. 75, 76–77; *Leach & Co. Inc.* v. *Peirson,* 275 U. S. 120, 128. That part of the letter which gave notice of a proposed tender of the deed was admissible. If the judge determined that the self serving statements were not to be admitted the proper course would have been to admit the letter and limit its effect. *Bouchard* v. *Bouchard, supra.* The notice was, however, in substance duplicated in another letter to the plaintiff, and the defendant was not prejudiced by the exclusion.

6. For the reasons stated in points 1 and 2, *supra,* the exceptions must be sustained.

*Exceptions sustained.*