JEFFREY B. KARLL & another[1] *vs.* MINOT LIGHT
INCORPORATED.

No. 89-P-819.

Plymouth. November 14, 1990. - March 4, 1991.

Present: SMITH, KAPLAN, & GILLERMAN, JJ.

*Contract*, Sale of real estate, Performance and breach. *Alcoholic Liquors*,
License.

In an action brought to recover a deposit paid by the prospective buyers
upon the signing of a contract for the purchase and sale of certain real
property, the judge incorrectly allowed the buyers' motion for summary
judgment, where the materials before him established that the buyers
failed to tender the purchase price thereby excusing the seller's per-
formance, that any tax arrearages of the seller were readily curable,
and that delay in transfer of necessary licenses to the buyers was con-
templated by the contract and was not a ground for nonperformance by
the buyer; and, based on the facts shown, summary judgment was to be
entered for the seller. [168-170]

CIVIL ACTION commenced in the Superior Court Depart-
ment on April 29, 1987.

The case was heard by *Chris Byron*, J., on a motion for
summary judgment.

*James C. Donnelly, Jr.* (*Joseph M. Hamilton* with him)
for the defendant.

*David M. McCarthy* for the plaintiffs.

KAPLAN, J. On September 22, 1986, the plaintiffs (buyer)
and defendant (seller) entered into a purchase and sale con-
tract for the "Minot Light Inn" in Scituate, which consisted
of a restaurant and lounge. The contract was subject, among
other things, to the transfer of applicable licenses to the new
owner. The purchase price was stated thus: "$800,000 of
which $25,000 has been paid as a deposit this day and

---

[1]Joseph P. Venezia.

$750,000 is to be paid at the time of delivery of the deed in cash, or by certified, cashier's, treasurer's or bank check, $25,000 to be paid upon transfer of all licenses necessary to operate as restaurant-inn and bar." The closing date stated in the contract was November 22, 1986.

In October, 1986, the buyer, through Minot Beach Club, Inc., a nominee, joined with the seller in applying to the Licensing Board of Scituate to approve a transfer of the seller's liquor license to the nominee. Approval was not forthcoming until December 8 or 9, 1986. Further approval was needed from the State Alcoholic Beverages Control Commission (ABCC).

Meanwhile the contract closing date of November 22, 1986, had been extended at the buyer's prior request to December 19.[2] It was further extended to December 24. There is no serious dispute that at that date the buyer failed to tender the $750,000.[3] The seller was ready, willing, and able to transfer title to the property and had obtained from the Department of Revenue for the first time documents indicating that there were no outstanding tax liabilities affecting the seller or the property.[4] The buyer did not at the time complain of any default by the seller.

On January 13, 1987, the seller was informed by the Department of Revenue that the department had filed a protest

---

[2]According to the seller, the buyer's attorney said that this delay was due to an irregularity in the nominee's application to the licensing board.

[3]The reason appears to have been lack of funds. The seller's clerk states in his affidavit that buyer's representative admitted that the buyer could not close because of lack of funds, and seller's attorney swears that this admission was later confirmed by the buyer, the plaintiff Karll. The buyer does not meet this evidence. He never alleges his readiness to perform but chooses rather to charge that "defendant [seller] has not satisfied his obligations." The record contains buyer's refusal of a request for admission that the buyer failed to tender the purchase price, but this appears to have been pro forma. Cf. Mass.R.Civ.P. 56(e), 365 Mass. 825 (1974); 10A Wright, Miller & Kane, Federal Practice & Procedure § 2739, at 521-522 (1983).

[4]The documents were: certificate of good standing (dated December 22, 1986), releases of meal, withholding, and room tax liens (undated, releasing liens of August 20 and November 5, 1986), and waiver of corporation excise tax lien (dated December 23, 1986).

with the ABCC blocking the transfer of the liquor license. Subsequently the department told the seller that the protest was due to a tax arrearage of $7,000 on the part of the seller's predecessor corporation.[5] The seller did not resolve the problem at that time.

On January 14, 1987, the real estate broker in the transaction informed the buyer that the seller considered the buyer to be in default under the contract and that it was entitled to the $25,000 of liquidated damages. On February 19, 1987, the seller's attorney verified that this sum, held as an escrow, had been paid over to the seller.

The ABCC notified the seller on March 9, 1987, that the protest of the Department of Revenue remained unresolved; if it was not disposed of by April 14, 1987, the ABCC would deny the license transfer.

On April 29, 1987, the buyer filed the present action against the seller to recover the $25,000. Upon materials establishing the facts as recounted above, a judge of the Superior Court allowed the buyer's motion for summary judgment and later denied the seller's motion to alter judgment. The seller appeals from these dispositions. We reverse and direct the entry of judgment for the seller (defendants) pursuant to Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974) (on motion for summary judgment, judgment in proper cases may go against the moving party).

The judge thought the seller on the closing date, December 24, 1986, stood in default of an obligation to have the liquor license transferred to the buyer on or before that date; as the seller was not ready, able, and willing to accomplish this, the buyer was excused from tendering the purchase price; consequently the seller had no basis for retaining the sum held as an escrow. We reach a contrary result on two lines of thought.

---

[5]The record does not state the exact ground on which the Department of Revenue acted. See the various recourses available to the department under G. L. c. 62C, §§ 47A, 50, 53, 54; *Caposella* v. *Commissioner of Rev.*, 26 Mass. App. Ct. 359, 362, 363 n. 9 (1988). In the present case it seems a prior license holder, which merged with the seller, was in arrears.

(1) Assuming a seller's default on the closing date, it was readily curable — the arrearage involved was in fact $7,000, less than one percent of the total involved in the transaction. At the date of closing, the buyer, unable to produce the meat, the $750,000, did not mention the delay in the transfer of the license as an excuse for his nonperformance. His complaint came as an afterthought. The case is thus comparable to those in which a buyer fails to complete a purchase for lack of funds; being thus delinquent, the buyer will not be heard to complain later about curable defects in the title.[6] See *Sullivan* v. *F.E. Alteaux & Co.*, 284 Mass. 515, 520-521 (1933) (where buyer refused to tender purchase money, seller was pemitted to retain deposit in spite of subsequently discovered tax lien); *Gossels* v. *Belluschi*, 4 Mass. App. Ct. 810, 811 (1976) (existence of utility easements at closing did not bar seller's action against repudiating buyer if easements were shown to be removable). See also *Howland* v. *Leach*, 11 Pick. 151, 155 (1861); *Carpenter* v. *Holcomb*, 105 Mass. 280, 285 (1870); *Curbes* v. *Aspinwall*, 114 Mass. 187, 193 (1873); *Sterling* v. *Levin*, 328 Mass. 2, 4-5 (1951); *Lavallee* v. *Cataldo*, 343 Mass. 332, 334 (1961).[7] We add that the seller herein was not obligated to clear the liquor license once it became obvious that the buyer did not intend to perform. See *Leigh* v. *Rule*, 331 Mass. 664, 668-669 (1954).

(2) We have assumed for our first point that there was an obligation to get the license transferred to the new owner by the closing date. However, the contract reads differently — it envisages that the clearing up of a license may be delayed for some period of time beyond the closing date when the deed is intended to pass against payment of $750,000. This reading

---

[6] The analogy is close: the liquor license is in essence part of the property bargained for and the departmental protest may be considered a cloud on the title to the license. Cf. *Caposella* v. *Commissioner of Rev.*, 26 Mass. App. Ct. at 360.

[7] The legal proposition we have stated and exemplified is not put in doubt by the plaintiff-buyer's cited cases, *Greenberg* v. *Lannigan*, 263 Mass. 594 (1926); *Vander Realty Co.* v. *Gabriel*, 334 Mass. 267 (1956); *Siegel* v. *Shaw*, 337 Mass 170 (1958). All involved contract breaches, apparent at closing time, and evidently not curable by the seller.

is not inconsistent with the provision that the contract is "subject to all year-round licenses being transferred to the new owner or manager designated by prospective new owners." It is significant that the responsibility for securing the transfer of licenses is placed on the buyer: "Buyer will, immediately upon execution of this agreement take any and all steps necessary to obtain transfer of all licenses at their expense. It is understood by all parties concerned that time is of the essence." Having the laboring oar with regard to these transfers, the buyer could hardly complain of delay in securing them, although he could in the end undo the whole transaction if an immovable obstacle should arise to his succeeding to so necessary a license as the liquor license. Also indicative of the parties' understanding about possible delay is the statement, quoted above, of how the $800,000 was to be paid: the deposit of $25,000, to be paid on the day of the execution of the agreement; $750,000 at closing; $25,000 upon transfer of licenses which is expected not to have taken place by the closing date (or it would have been treated together with the preceding provision). The conduct of the parties reinforces the conclusion that delay beyond the closing date was anticipated. A closing date of December 19, then December 24, was set which would likely not allow time for approval of the transfer by the ABCC even if there was no impediment. Finally, we have the fact that the buyer, in defaulting at closing, did not refer to any license question.

The judgment is reversed. Judgment is to be entered for the seller.

*So ordered.*