DOMENICO MONDILLO *vs.* WARD BAKING COMPANY.

FEBRUARY 26, 1948.

PRESENT: Flynn, C. J., Capotosto, Baker and Condon, JJ.

BAKER, J.   This is a petition for review brought under the provisions of the workmen's compensation act, general laws 1938, chapter 300.   It is now before this court on the petitioner's appeal from a decree entered in the superior court denying and dismissing his petition.

Evidence presented in that court by the petitioner was uncontradicted and disclosed in substance the following facts.   On October 28, 1940 he sustained an injury arising out of and in the course of his employment with the respondent, and thereafter on November 7, 1940 the parties entered into a preliminary agreement, subsequently approved by the director of labor.   Under this agreement the petitioner was paid compensation for total disability until February 3, 1941 when he returned to his previous work with the respondent at a wage at least equal to that which he had been receiving at the time of his injury.   A compensation agreement and settlement receipt to that effect was executed by the parties on February 10, 1941 and thereafter was approved by the director of labor.

The injury suffered by petitioner, who was a driver

salesman for respondent, was caused by having his right foot, ankle, and lower leg run over as he was alighting from one of respondent's trucks. As a result of this accident he received multiple lacerations of both knees, a crushing injury of the muscles, nerves and tendons of the parts affected, and deep punctured wounds of the right ankle causing the bone of the ankle and foot to be exposed. However, no bones were broken, but some atrophy of the right leg developed together with a general weakness of the leg and foot. The petitioner received medical treatment until March 19, 1941 at which time there were still weakness of the ankle, discoloration of the skin, and pain after he walked for some time.

Although his injury was not entirely healed, from February 3, 1941 until September 1941, when he stopped work of his own volition, the petitioner was employed by the respondent at work of the same general nature as before his accident but of a somewhat lighter character. He testified that while he was working he had trouble with his foot which became progressively worse and finally got so bad "I couldn't do anything more." Thereupon he notified the respondent and its insurance carrier of the situation and he was asked by the latter to submit to an examination by Dr. Harris and he did so. The petitioner also testified that at this time he was paid compensation for total disability for a period of about three weeks.

A few weeks prior to October 9, 1941 he went again for examination and treatment to his own physician, Dr. Anthony Corvese. The latter testified that petitioner's leg and ankle were then in practically the same weakened condition as in the previous March when he had last examined him. At petitioner's suggestion the doctor executed an affidavit, directed to the former's draft board, describing his injury, present condition and length of treatment, and expressed therein the opinion that because of such injuries the petitioner would not make a good soldier, and specifically that he would not be able to march. The

petitioner, however, was inducted into the army October 9, 1941.

He testified in substance that during his first four months in the service he was compelled to march frequently, and often for considerable distances. As a result the pain in his foot and leg became more severe, his right foot began to turn over on its side so that he walked to some extent on his ankle, and he developed what is commonly known as a clubfoot. For a time he was in a camp hospital, and after four months' service he was placed in the camp kitchen as a cook. He was discharged from the army December 14, 1945.

It appears in evidence that on June 19, 1942 while the petitioner was on a furlough Dr. Corvese examined his leg and foot and found that the foot was considerably turned over. This was the first time that the doctor had seen it in that abnormal position, and he wrote a letter to the petitioner's commanding officer at camp making certain suggestions. By manipulation at that time the doctor could get the foot back into proper shape. He next saw petitioner professionally on January 10, 1946 after the latter was out of the army. On examination he found that the condition of the foot was substantially the same as in June 1942 only a little more pronounced. He could correct its position only partially by manipulation and not completely, as he had been able to do earlier. He advised treatments and the petitioner's foot was operated on, under a spinal anesthesia, at the Rhode Island Hospital early in February 1946. Thereafter he wore a plaster cast for from six to eight weeks and used crutches for a short time. Apparently a good result was obtained from the operation as the petitioner now has no deformity although he suffers some slight pain. He was reemployed by the respondent about the middle of May 1946 at the same wages he had received before he went into the army but doing lighter work.

In this proceeding the petitioner claims that because of total disability he is entitled to receive compensation at

the rate of $20 per week from December 14, 1945, when he was discharged from the army, to a date in the middle of May 1946 when he returned to his employment with the respondent. He is also claiming payment for certain medical expenses. To support his position that the appeal should be sustained he contends in general that certain material findings of fact of the trial justice were not supported by any legal evidence and therefore were erroneous, and that the uncontradicted evidence in fact clearly shows an unbroken chain of causation between the primary injury and any aggravation thereof or any further injury which the petitioner later suffered.

On the other hand, the respondent argues that the findings of fact which were in its favor were supported by legal evidence and therefore, in the absence of fraud, are not open to attack in this court, and that the question of causation is one of fact. The respondent also maintains that the instant petition was properly denied and dismissed because it did not raise any question for determination, contained no specific allegations, especially in respect to the nature of petitioner's claim, and in addition was prematurely filed since admittedly no compensation was due the petitioner at that time.

█ Upon consideration we are of the opinion that, in. the circumstances appearing herein, we should not order a dismissal of the petition on the grounds that it was improperly drawn or prematurely brought. While we cannot give our unqualified approval to the petition as filed, in that it is in very general terms, nevertheless it is on a printed form furnished by the department of labor, is signed by the petitioner, and asks for a review of his incapacity. Further when the petition came up for trial *de novo* in the superior court, after a hearing in the department of labor, the respondent went to trial without asking for a continuance on the grounds of surprise or that the petitioner should make a fuller statement of the dispute between the parties.

478

█ In respect to the time when the petition was brought we agree with the respondent that the petitioner acted prematurely. The transcript shows that, by advice of counsel, the petition was filed while the petitioner was in the army and had no present claim for compensation against the respondent based on the development of his clubfoot, and that it was filed to protect any possible claim which he might have after he was discharged from the service. It seems reasonable to assume that the petition was brought in 1942 either through excessive caution or because the provisions of public laws 1941, chapter 1064, which materially extended the time for filing petitions for review, had been overlooked. In the circumstances we do not consider such premature filing fatal to the maintenance of the petition. Nowhere does it appear that such action deprived the respondent of any substantial rights, prevented it from making its defense, or caused it to suffer any injustice.

The principal question in the cause, however, is whether or not there was an unbroken causal connection between the petitioner's original injury and the clubfoot condition which developed after he had been in the army a short time. On this point the trial justice made the following findings of fact in the decree entered by him: "14. That the life the petitioner led in the Army served in this case as an intervening and direct cause of the condition which the petitioner now seeks to hold his employer responsible for. 15. That there is no causal relationship between the accident first suffered by this employee and any incapacity he may have suffered after his discharge from the Army until May 13, 1946, in view of said intervening cause." The respondent relies on the above-quoted findings to support the decision of the trial justice. It contends that while the intervening cause, as set out in such findings, is not stated to be the sole and independent cause of the petitioner's clubfoot, nevertheless there is a finding that there was no causal relationship between his original accident and

any incapacity he may have suffered after his discharge from the army.

In passing we may observe that in our opinion the sixth finding of fact is to some extent inconsistent with the fifteenth finding. The sixth finding reads as follows: "That sometime after his entry into the Army the petitioner developed a club-foot condition and that this was a direct result of long and continued marching *because of a weak foot as the result of his accident.*" (italics ours)

■■■ Generally speaking, a petitioner claiming compensation must prove an unbroken causal connection between the accident relied on and the incapacity for work upon which the claim for compensation is based. Such accident must at least be a reasonable contributing cause. If the incapacity is brought about solely by an intervening independent cause unconnected in any way with the original accident, which is the respondent's contention here, then the causal connection between such accident and the incapacity is broken, and the petitioner cannot rely on the original accident as a contributing cause of his injury and incapacity. That substantially was the situation as disclosed in the recent case of *DeLallo* v. *Queen Dyeing Co.,* 73 R. I. 325, 56 A. 2d 174, which is not controlling here as it is clearly distinguishable on its facts and findings from the instant case. However, in the course of the opinion in that case we made the following statement: "In compensation cases if there is legal evidence showing a reasonable causal connection between the accidental injury and the employee's disability, then it can fairly be said that the injury was the cause of the disability in contemplation of the act."

■■ In any given case whether or not such unbroken causal connection exists or whether petitioner's incapacity is due solely to an intervening independent cause, which breaks the causal connection, are questions of fact. That being so it is well settled that if the finding of the trial justice on such a question of fact is entirely without legal

evidence to support it, the finding amounts to an error of law and will be reviewed on appeal and set aside; but if it is supported by such evidence the finding is conclusive in the absence of fraud. *Jillson* v. *Ross*, 38 R. I. 145.

An examination of the transcript leads us to the conclusion that the fourteenth and fifteenth findings of fact of the trial justice are not based on any legal evidence. Indeed, in our opinion the evidence is directly contrary to the above findings and shows that petitioner's original injury was aggravated by life in the army, especially by his marching. In that connection we may observe that while in the army the petitioner obviously had to act under orders, and the duties he was called upon to carry out, such as marching, he did not perform of his own volition.

The respondent offered no witnesses. The only medical testimony on the issue of causal connection between the original accident suffered by the petitioner and the development of his clubfoot a short time after he had been in the army was that given by Dr. Corvese. He testified as follows: "Q. Can you tell us in your opinion, from what history the petitioner gave you, what was the cause of that abnormal condition? A. It was my opinion that there was a causal relationship between the result of the injury and the continued marching—not having been used to it—having to march every day—the leg was weak—the result of the accident and the clubfoot was the result of the excessive marching because of a weak foot as a result of the accident. Q. So that in your opinion, Doctor, that result would not have obtained had it not been for the injury he suffered while employed by the Ward Baking Company, is that correct? A. That is almost entirely correct. . . . Q. And I believe you told us you believe that condition that you found was a direct result of his continuing and excessive marching because of the fact and as a result of his accident? A. Yes. Q. There is no question in your mind that the marching this boy did, the work

he did and performed as a foot soldier in the Army, aggravated the condition which he had in September, 1941, is there, Doctor?  A. Yes.  But if I may say so, I would say if he had not had that accident I don't believe he would have had a clubfoot no matter how much he marched."

■ This testimony stands uncontradicted and was apparently overlooked by the trial justice when he made his finding that there was no causal relationship between the accident first suffered by the petitioner and any incapacity he may have suffered after his discharge from the army. Further, in our opinion there was no legal evidence to support the finding that the petitioner's life in the army served as an intervening and direct cause of his clubfoot, if such finding is construed to mean that his army life was the sole, intervening and independent cause of the clubfoot. Such evidence would be necessary if the finding is to be conclusive and not subject to review by this court.

In the absence of such supporting evidence, we are of the opinion that the fourteenth and fifteenth findings of fact were erroneously made as a matter of law and should be set aside.  In these circumstances we find that the petitioner is entitled to receive $20 per week for total disability from the date of his discharge from the army to the date of his return to work with the respondent, and also such proper medical expenses, within the provisions of the workmen's compensation act, as he may have incurred since such discharge.

The petitioner's appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the superior court for the entry of a final decree in accordance with this opinion.

*Joseph Mainelli,* for petitioner.

*Sisson, Fletcher, Worrell and Hodge,* for respondent; *Lee A. Worrell* of Counsel.