CONNOR *v.* STATE TREASURER.
CONNOR LUMBER & LAND COMPANY *v.* SAME.

1. EMINENT DOMAIN — TIMBER LANDS — INJUNCTION — INTEREST — PENDENCY OF ACTION.
    . No interest is due on awards made in condemnation of timber lands during the pendency of the proceedings in the trial court, notwithstanding the owner was restrained from cutting timber, since no loss can be shown which would make interest run and the standing timber was all important in assessing damages in favor of the owner.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 4, 7–9]  18 Am Jur, Eminent Domain §§ 272–277.
[1, 3, 4, 7–9]  Interest on damages for period before judgment for injury to, or detention, loss, or destruction of, property.  96 ALR 18; 111 ALR 1299.
    Right to interest in eminent domain as affected by agreement as to amount of compensation. Annotation: 91 US (L ed) 540.
[2]  2 Am Jur, Appeal and Error § 117; 18 Am Jur, Eminent Domain §§ 373, 374.
[6–8]  15 Am Jur, Damages § 159 *et seq.*
[9]  18 Am Jur, Eminent Domain § 278.
[9]  Right in respect of taxes where property is taken in eminent domain.  79 ALR 116.
[10]  14 Am Jur, Costs § 91.

2. SAME—FINALITY OF AWARD—APPEAL.

An award in condemnation proceedings does not become final until affirmance of the judgment on appeal, where the owner chose to appeal.

3. SAME—JUDGMENT—INTEREST—APPROPRIATION—APPEAL.

Landowner was not entitled to interest on judgment in condemnation proceedings from the date of the judgment until its affirmation by the Supreme Court, where the moneys had been appropriated by the condemner and held by it not through the condemner's fault but through the owner's fault, there being no "taking" until final disposition on appeal (CL 1948, § 213.36).

4. SAME—JUDGMENT—DEMAND—INTEREST.

No interest on judgment in condemnation proceedings is allowable, where there has been an appropriation by the condemner of sufficient money with which to make payment thereof and owner fails to make demand for the proper amount due (CL 1948, § 213.36).

5. SAME—JUDGMENT—PAYMENT—DEMAND.

An owner of property which has been taken in condemnation proceedings does not have to accept payment piecemeal, but may not demand more than is his due.

6. INTEREST—DEMAND—STATUTES.

A demand, required by statute as a foundation for a claim of interest, must be distinct, for the sum to which the person making the demand is entitled, and otherwise in substantial compliance with requirements set forth in the statute, in order to start the running of interest.

7. EMINENT DOMAIN—JUDGMENT—DEMAND FOR PAYMENT—INTEREST.

A demand by the property owner for payment of judgment awarded him in condemnation proceedings is necessary in order to start interest running (CL 1948, § 213.36).

8. SAME—COSTS—INTEREST—DEMAND.

Party whose property was condemned is not entitled to interest on costs awarded on retaxation proceedings, where it made no proper demand therefor as required by statute (CL 1948, § 213.36).

9. SAME—STATES—APPEAL—TAXES—OWNERSHIP.

The State, as condemner of land, is not the owner thereof pending appeal, where the owner denies both the necessity for the taking and adequacy of the award, hence the State

was not liable for taxes paid or which became payable dur-
ing pendency of the proceedings and could deduct unpaid
taxes from award made but the owner is entitled to fees
for witnesses and experts (PA 1931, No 270, as amended by
PA 1941, No 365).

10. COSTS—PUBLIC QUESTION—MANDAMUS FOR PAYMENT OF AWARD
IN CONDEMNATION PROCEEDINGS.

No costs are allowed in mandamus proceedings against the
State to compel payment of interest on award and costs in
condemnation proceedings, a public question being involved
(CL 1948, § 213.36).

Separate petitions for mandamus by Gordon R.
Connor and Connor Lumber & Land Company to
compel D. Hale Brake, Treasurer of the State of
Michigan, and another to pay condemnation judg-
ments with interest according to plaintiffs' compu-
tations. Cases presented on record. Submitted Jan-
uary 22, 1952. (Calendar Nos. 44,288, 44,289.) Writ
granted for amount without interest and deducting
certain taxes, if amount is not paid within 10 days,
April 7, 1952.

*Graves & Casey* and *Pierce, Planck & Ramsey,* for
plaintiffs.

*Frank G. Millard,* Attorney General, *Edmund E.
Shepherd,* Solicitor General, and *Nicholas V. Olds,*
Assistant Attorney General, for defendants.

BUTZEL, J. Gordon R. Connor and Connor Lum-
ber & Land Company, plaintiffs (herein referred to
as Connor), filed petitions against D. Hale Brake,
treasurer of the State of Michigan, and commission
of conservation of the department of Conservation,
defendants (herein referred to as Conservation);
for a mandamus to order Conservation to pay cer-
tain judgments based on condemnation awards and
interest in accordance with Connor's computations.
We issued orders to show cause and of reference to

the circuit court of Gogebic county. The petitions are presented on 1 record and will be discussed accordingly as our decision on either petition will determine the questions raised in each of them. The underlying facts leading to the present proceedings are very fully set forth in the record and opinions in *Department of Conservation* v. *Connor,* 316 Mich 565, to which reference will be made.

PA 1944 (1st Ex Sess), No 27 (CL 1948, § 299.101 *et seq.* [Stat Ann 1951 Rev § 13.790(21) *et seq.*]), provides for acquisition and development of recreational facilities in several defined areas and appropriates $5,000,000 for this purpose. The act expressly states that $1,000,000 of the appropriation is to be used for the acquisition by condemnation proceedings of the properties in Gogebic and Ontonagon counties in what is known as the Porcupine Park area, in which the properties of Connor were located. On April 18, 1944, condemnation proceedings were begun by Conservation in the circuit court for the county of Gogebic to condemn certain properties in the area. The jury found necessity and awarded the sum of $211,872.30 to the Connor Lumber & Land Company, and $4,774.10 to Gordon Connor, both of whom appealed from judgments on the awards rendered November 25, 1944. The appeals were not submitted to this Court until October 18, 1946, and the judgments were affirmed on January 7, 1947, with costs to Conservation.

Three days after the cases were begun in the circuit court, Conservation brought suit to enjoin Connor from removing any timber from the lands which Conservation sought to condemn, and a temporary injunction was issued as well as an order to show cause. Connor at first made no attempt to have the temporary injunction dissolved. It was stated by Connor's attorney at the hearing on the order to show cause that up to that time Connor had not

been damaged but it denied that the court had jurisdiction. Connor was not interested in the scenic beauty of the property but principally in the timber, while Conservation was interested in both, it being also desirous of preserving a large stand of virgin timber for its historical value by thus acquiring one of the few remaining large stands of such timber and exhibiting it to visitors to the area as one of the sources of a basic industry of northern Michigan. Connor took no further action to appeal from the order granting the temporary injunction and remained the sole title owner until divested by final judgment after failure to prevail on the appeal to this Court. In the present mandamus proceedings, Connor no longer denies that the court had jurisdiction but in its brief now concedes that the court had jurisdiction to issue the injunction to preserve the *status quo* during the pendency of the condemnation proceedings. Conservation, on the other hand, could not take possession before the final disposition of the case in this Court. Until that time, Connor had possession but could not remove the uncut timber, the value of which was included in the awards and judgments.

The entire sum of $1,000,000 had been previously set aside to Conservation for the purpose of acquisition of lands in the Porcupine Park. On March 12, 1947, shortly after the decision in this Court affirming the award of the jury, there was filed with the county clerk of Gogebic what is known herein as defendant's "Exhibit 502" containing the facts with reference to the condemnation, including the verdict of the condemnation jury, schedule of the lands included, the verdict entered, the judgment entered thereon, the remittitur from the Supreme Court affirming the judgment, a copy of a resolution passed by the administrative board on the 21st day of March, 1944, setting aside funds for the acquisition

of the lands and certification of D. Hale Brake, treasurer of the State of Michigan, dated March 5, 1947, stating that he had set apart and was now keeping moneys directed by the resolution of the State administrative board in payment for the lands as required by the verdict.

On May 8, 1947, the State treasurer, through his deputy, wrote to the Connor Lumber & Land Company that a State warrant payable to it in the amount of $201,977.62 was being held and upon demand would be mailed to it, in accordance with the following computation:

| "Connor Lumber & Land Company, gross award .. | | $211,872.30 |
|---|---|---|
| less: 1945 taxes through April 30, 1947 .... | $4,214.89 | |
| 1946 taxes through April 30, 1947 .... | 3,959.72 | |
| Supreme court costs . | 454.59 | |
| Circuit court costs .. | 230.99 | |
| Witness fees, et cetera, allowed by (circuit) court ............. | 1,034.49 | 9,894.68 |
| Warrant ........ | | $201,977.62" |

A letter of the same date was sent to Gordon Connor, showing the following computation:

| "Gordon Connor, gross award . | | $4,774.10 |
|---|---|---|
| less: 1945 taxes through April 30, 1947 ............. | $107.07 | |
| 1946 taxes through April 30, 1947 ............. | 100.59 | |
| Supreme court costs ..... | 10.24 | |
| Circuit court costs ...... | 5.21 | |
| Witness fees, et cetera, allowed by court ........... | 23.31 | 246.42 |
| Warrant .......... | | $4,527.68" |

Connor, on May 29, 1947, through their attorneys, wrote to the attorney general of the State of Michigan, stating that they would not accept such computations on which the taxes for 1945 and 1946 were deducted and that the treasurer had not taken into account interest from the date of confirmation or from the commencement of the condemnation proceedings up to the date of the award. The attorneys further stated that they had instructed local counsel to move to set aside the taxation of costs in the circuit court in favor of the State and to take necessary steps for the taxation of costs in behalf of Connor in the event that the taxation was set aside and that if it was the contention of the State that there was no liability for interest upon the award the question would have to be raised in a separate action either in the State or Federal courts.

On motion duly filed, the circuit court for Gogebic county set aside the costs and witness fees totaling $1,265.48 in the *Connor Lumber & Land Company Case,* and $28.52 in the *Gordon Connor Case,* and on December 5, 1947, supplemental State warrants were issued for these amounts. No notice was given to Connor that such warrants had been issued, although it knew of the court order authorizing them. The latter appealed from the circuit court's denial of the cost of fees of expert witnesses that Connor was put to and in *Department of Conservation* v. *Connor,* 321 Mich 648, this Court reversed the circuit court and allowed costs and witness fees in favor of Connor to be determined by the circuit court in its discretion. Costs of the second appeal were thereafter taxed in favor of Connor in the amount of $223. Thereupon the circuit court allowed costs and expert and witness fees in favor of Connor in the sum of $4,534.30 on August 16, 1948. A warrant for the latter amount was issued on October 5, 1948, and mailed to Connor, whose attorney refused to accept

it until the question of the liability of the State for interest was decided. The warrant upon its return was filed with the State treasurer. ' '

, On or about November 12, 1948, the instant mandamus proceedings were instituted and an order to show cause was issued. Connor, as the moving party, did not file a record in this Court until June 23, 1951, a delay of over 2 years. The record fails to disclose the reason for this long delay. Connor now contends that it is entitled to: (1) Interest on the gross awards from the date of the issuance of the preliminary injunction to the present, (2) repayment of 1944 taxes paid by Connor Lumber & Land Company, with interest; (3) costs taxed in its favor on the second appeal, with interest. Connor also contends that the deduction of the 1945 and 1946 taxes from the gross awards was improper.

There is no interest due on the awards during the time of the pendency of the proceedings in the trial court, as claimed by Connor. There was no action by the State such as to constitute a "taking" of the property. Although Connor was restrained from cutting timber, no loss can be shown thereby which would make interest run. The value of the standing timber was all-important in assessing damages in favor of Connor, who was awarded damages for an amount found to be the value of the land and the timber. Had Connor proceeded to cut the timber it would have reduced very materially the value of the land, and consequently the jury award, so its claim for interest during the pendency of the injunction cannot be allowed on that basis.

The moneys to pay the judgment on the award were available at the time it was entered. Connor, however, chose to appeal, and thus the award did not become final until the judgment on the jury's award was affirmed by this Court. We cannot subscribe to Connor's claim that it was entitled to in-

terest for the period that elapsed during the time from the date of the judgment and that of its affirmation by this Court. The moneys had been appropriated by the State and were held not through the State's fault but through the act or fault of Connor. We were presented with a similar situation in *Marion* v. *City of Detroit,* 284 Mich 476. Money was set aside to pay the condemnation award and the judgment of the condemnation court was appealed, no demand for the amount of the award being made until after the appeal. It was held that no interest was proper for the period of the appeal as a tender had been made which relieved the city of liability for interest. Although the city had originally tendered interest on the award to the date of final affirmance, we found that no interest should be charged from the date the funds were set aside. The effect of the ruling was that there was no "taking" such as to give rise to interest as had existed in *Campau* v. *City of Detroit,* 225 Mich 519 (32 ALR 91).

Connor's claim for interest after the judgment and up to the present time should similarly be denied until proper demand is made. If Connor is correct in its contention that the award draws interest to date, it could have waited for years, refusing to accept the amount of the awards on some technicality or other, until it needed the money, in the meantime drawing 5% interest on the whole amount at the expense of the State. PA 1911, No 149 (CL 1948, § 213.36 [Stat Ann § 8.26]), provides:

"When a verdict of the jury shall have been finally confirmed by the court, and the time within which to take an appeal has expired, or if an appeal is taken, on the filing in the court below of a certified copy of the order of the Supreme Court affirming the judgment of confirmation, it shall be the duty of the clerk of the court to transmit to the petitioner a certified copy of the verdict of the jury

and of the judgment of confirmance, and of the judgment if any of affirmance, and thereupon, or within 1 year thereafter, said petitioner shall set apart and cause to be provided the amount required to make compensation to the owners of and persons interested in the private property taken as awarded by the jury, and shall by resolution direct payment to the persons respectively entitled to the money so set apart and awarded; and it shall be the duty of the treasurer of the petitioner to hold said money so set apart, to securely keep said money for the purpose of paying for the property taken and to pay the same to the persons entitled thereto according to the verdict of the jury *on demand,* and not pay out the money for any other purpose whatever. When ever the necessary sum is actually set apart in the hands of said treasurer, said treasurer shall, giving the title of the cause and describing the property taken, make and sign duplicates verified by his oath, showing that the amount of compensation awarded is in his hands, and shall cause 1 of the certificates to be filed in the office of the clerk of the court in which the proceedings were had, and the other to be filed with the register of deeds of the county, which certificate shall be prima facie evidence of the matters therein stated. Whenever the amount of compensation is thus set aside and thus secured to be paid, the petitioner may enter upon and take possession of and use such private property for the purpose for which it was taken. In case of the resistance or refusal on the part of any one to the petitioner entering upon and taking possession of such private property, for the use and purpose for which it was taken, at any time after the amount of the compensation aforesaid is actually set aside and ready to be paid to those entitled thereto, the petitioner may apply to the court and shall be entitled on making a sufficient showing to a writ of assistance to put it in possession of the property." (Italics ours.)

No demand has been made for the proper amount due Connor up to the present time. We can see no reason for Connor's delay. It is true that it did not have to accept payment piecemeal, but it could not demand more than was due it. It could have offered to accept under protest on account the sum that the State concluded was due them and litigate the comparatively small additional sum claimed. If the State refused to do this, Connor could have promptly applied to the proper tribunal to determine the amount. Instead Connor through its attorneys when the State on October 15, 1948, sent its warrant for the amount found due Connor for costs for witnesses and experts, in accordance with our opinion in *Department of Conservation* v. *Connor,* 321 Mich 648, replied in a letter addressed to the attorney general:

"We cannot accept this check in full settlement of the costs and will hold it subject to your order until the question of the liability of the State for interest is decided by the Court."

We believe the case is ruled by *Marion* v. *City of Detroit, supra,* when we held (syllabus):

"Where a demand is necessary as a foundation for a claim of interest, it must be a distinct demand for the sum of money to which the person making the demand is entitled, and if the statute requires that a demand be made in writing, substantial compliance with requirements must be made to start the running of interest,"

and quoted with approval from *Appleton Water Works* v. *City of Appleton,* 136 Wis 395, 399 (117 NW 816), as follows:

"If private individuals were involved, no demand for payment would have been necessary to start the running of interest. With municipal corporations

the rule is different, in some jurisdictions at least, and a demand of payment is held necessary to create a default on the part of such corporations so as to set interest running."

Such is the rule in the instant case. The State could not use the funds so appropriated, nor could it pay Connor when it insisted on a larger amount than it was entitled to.

The same is true in regard to the costs later granted Connor when the costs of $1,265.48 in the *Connor Lumber & Land Company Case,* $28.52 in the *Gordon Connor Case* in the original suit were set aside, the State issued its warrants for each of these amounts. When costs amounting to $4,534.30 were reassessed in favor of Connor, the State issued its warrant for this amount. However, Connor made no proper demand for such amounts, but refused them demanding, instead costs, interests and taxes. Connor therefore is not entitled to interest on such costs, as it made no proper demand per statute and as required under the doctrine of the *Marion Case.*

After the condemnation suit was begun and judgment entered on the verdict, in January, 1945, Connor paid the 1944 taxes on the Connor Lumber & Land Company properties in the amount of $3,810.60. It made no claim to be reimbursed for such taxes until the present mandamus proceedings were instituted. It stated it was required to pay because of land contracts with others, to protect such contracts from forfeiture. At this time and subsequently when the 1945 and 1946 taxes became due, the title and possession rights were still in Connor, although it had been enjoined from cutting the timber. There had been no "taking" by the State so as to become liable for taxes. The State did not own the property while the appeal was pending. Connor strenuously contends that when it was enjoined from cutting

timber, the State took possession, at least constructively, and should have repaid the 1944 taxes and made no deduction for 1945 and 1946 taxes assessed against the property and which taxes Conservation paid. The law is plain, however, that the State could not take possession while the appeal was pending in which Connor denied necessity and the adequacy of the award, and even though Connor may claim it has some equitable rights to a release from taxes, it being the sole title owner was subject to PA 1931, No 270, as amended by PA 1941, No 365 (Stat Ann 1946 Cum Supp § 8.231), which provides:

"Sec. 1. In the case of property taken in any condemnation proceedings, the award shall first be applied to the payment of all taxes and/or special assessments. In case such award shall be insufficient to pay all of such taxes and/or special assessments, such award shall be applied pro rata to the payment of such taxes and/or special assessments, and such payment shall be deemed satisfaction of such taxes and/or special assessments as to the property so taken and the petitioner shall be entitled to a receipt from the proper tax collecting officer or officers so stating. The terms 'taxes' and 'special assessments' as used in this act shall be deemed to include not only delinquent but also current taxes and special assessments as well as any thereafter to be levied upon any assessment theretofore made and moneys required to be paid to redeem such property from sale for nonpayment of delinquent taxes. In case title to such property passes, by virtue of such proceedings after the date upon which the assessment roll is required to be completed and before the levying of the tax or special assessment, or the determination of the amount thereof, a sufficient sum shall be withheld and applied to the payment of such tax or special assessment following the levy or determination thereof. Where lands have been bid in to the State at tax sales and the period of redemption

has not expired, the amount required to redeem from such sale shall be considered as unpaid taxes."

We have carefully considered the other authorities cited to us by petitioners, but find them to be so readily distinguishable from the instant case we do not discuss them here.

Connor is entitled to the full amount of the award plus the sum determined by the circuit court as due Connor for witnesses and expert fees and the costs in the second appeal in *Department of Conservation v. Connor*, 321 Mich 648, but less the amount of the 1945 and 1946 taxes and the amount of the costs of the appeal in the first case in 316 Mich 565. Conservation has the funds and is willing to pay this amount so computed. If it does not do so within 10 days after demand is made, mandamus will issue. For the present it is denied. A public question being involved, no costs are allowed.

NORTH, C. J., and DETHMERS, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.