FRIEDT *v.* CITY OF DETROIT.

1. EMINENT DOMAIN—INTEREST ON AWARD—DEMANDS—CONDITIONS. Parties in condemnation proceedings were not entitled to interest upon sum awarded for the taking of their property from the time treasurer of the city which had condemned the property filed his affidavit that the funds were available to pay the award until the time when they contacted the treasurer's office and made demand therefor at which time unlawful conditions were attached to the payment over of the amount awarded which the property owners declined to meet.

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 18 Am Jur, Eminent Domain §§ 272–276.
[5, 6] 52 Am Jur, Tender § 24.
[7] 18 Am Jur, Eminent Domain § 272.
[9] 18 Am Jur, Eminent Domain § 378.

2. SAME—DEMAND FOR PAYMENT OF AWARD—CITY CHARTER.

Record *held*, to establish that provisions of city charter were met as to demand for money awarded owners for property taken by condemnation at the first time they contacted the city treasurer's office, the charter not requiring that a written demand be made.

3. SAME—AWARD—INTEREST.

A city which condemned property and took possession thereof is liable for payment of interest from date of the award until the date when the city treasurer filed an affidavit that the money to pay the award was available.

4. SAME—SUFFICIENCY OF DEMAND.

A demand for payment of award by 3 of 4 property owners whose property had been taken in condemnation proceedings constituted a demand for all 4 where the fourth party had conveyed by quitclaim deed then of record to the other 3 parties.

5. TENDER—CONDITIONS IN EXCESS OF REQUIREMENTS.

A person who attaches conditions to a tender that are in excess of· requirements does so at his peril and such tender does not put the opposite party in default.

6. EMINENT DOMAIN—CONDITIONS—INTEREST—DEMAND.

City's imposition of conditions to payment of award of jury for property taken in condemnation proceedings, that were in excess of the conditions permitted by city charter, did not estop property owners from claiming interest on the. award from time demand for the money was made in accordance with the charter.

7. SAME—CONFIRMED AWARD IN CONDEMNATION PROCEEDINGS.

A confirmed condemnation award is a judgment and bears interest as provided by statute for money judgments (CL 1948, § 438.7).

8. SAME—INTEREST—LACHES.

Property owners who deferred filing action for interest on condemnation award for over 3 years were not guilty of laches in such delay, notwithstanding it may have been apparent that city's position necessitated the bringing of an action to recover all sums due the property owners, such an award constituting a judgment bearing interest (CL 1948, § 438.7).

9. COSTS—CONDEMNATION PROCEEDINGS—INTEREST ON AWARD.

No costs are allowed on appeal and cross appeal in action respecting interest on condemnation award, where order as to

mandamus, granted in part by the trial court, is modified in
favor of property owners but relief is not granted in full.

SMITH and SHARPE, JJ., dissenting.

Appeal from Wayne; Edwards (George), J. Submitted June 7, 1955. (Calendar No. 46,474.) Decided December 1, 1955. Rehearing denied March 1, 1956.

Mandamus by Glenn H. Friedt, H. E. Adelsperger, Jr., and Vincent B. Arnold against the City of Detroit, a municipal corporation, and Charles N. Williams, City Treasurer, to enforce payment, with interest, of award on condemnation. Plaintiffs review order entered allowing mandamus, in respect to effect of demands and their relation to computation of interest by appeal in the nature of certiorari and defendants cross-appeal. Modified and remanded.

*Fischer, Sprague, Franklin & Ford (Edward B. Harrison, of counsel), for plaintiffs.*

*Paul T. Dwyer,* Corporation Counsel, *Vance G. Ingalls* and *Frederick E. Byrd,* Assistants Corporation Counsel, for defendants.

KELLY, J. The city of Detroit commenced condemnation proceedings for the purpose of slum clearance in 1947. Three lots owned by plaintiffs Glenn H. Friedt, H. E. Adelsperger, Jr., and Vincent B. Arnold, and one lot owned by United Platers, Inc., were involved in this condemnation proceedings. The United Platers, Inc., was owned by plaintiffs, and on October 11, 1949, United Platers conveyed its interest in said lot to plaintiffs, the deed being recorded October 14, 1949.

On June 14, 1950, a jury award of $140,000 was confirmed in favor of plaintiffs and United Platers,

Inc., "as their interests may appear." Defendant city treasurer, on July 26, 1950, filed an affidavit with the recorder's court stating that funds were available to pay this award, and on the same date notified plaintiffs that the award would be made and paid on the following conditions:

"Before we can make payment to you it will be necessary that you furnish us with (1) a signed release, (2) a certificate of title, (3) a quitclaim deed. Payment will be made to you within 5 days after receipt of these 3 instruments properly executed to the city of Detroit."

Plaintiffs' first contact with the treasurer was on May 3, 1951, when their attorney made oral demand for payment on Mr. Repp, in charge of processing payment of condemnation awards. Plaintiffs' attorney at this time informed Mr. Repp that he had with him a disclaimer of any interest in the award, executed by United Platers, Inc.

Mr. Repp asked for the 3 instruments mentioned in the treasurer's letter of July 26, 1950. Plaintiffs' attorney refused to furnish same and suggested that Repp contact the corporation counsel's office. Between this date and July 31, plaintiffs' attorney telephoned Repp and was informed by him that he had not heard from corporation counsel. On July 31, 1951, plaintiffs' attorney contacted the treasurer's office and was again informed that it had not heard anything from corporation counsel's office, and that the money could not be paid until the requested instruments were furnished.

About September 1, 1951, plaintiffs' attorney again contacted Repp and received the same information as was received on the previous visit. He then contacted Mr. Ingalls, of the corporation counsel's office, who said that they would waive the quitclaim deed and title search, but would insist upon a signed re-

lease, said release providing that the plaintiffs "do hereby release, quitclaim and convey to said corporation, forever, the said piece or parcel of land as aforesaid, and do waive and relinquish all right of appeal of said verdict to the Supreme Court of said State, and to [*sic*] waive and relinquish for their heirs, executors and administrators, all remedies or rights of action, either in law or in equity, which they may possess by reason of any informality or error of any nature in the proceedings."

Plaintiffs' attorney objected, stating that if at a later date the condemnation proceedings were found to be faulty his clients would have no remedy, having conveyed to the city their interest, and that his clients wished to retain that right if the city, for any reason, was not able to rely upon the condemnation award.

Discussions on this matter were held at various times between then and December, 1951. On December 31, 1951, plaintiffs' attorney offered the corporation a receipt which provided:

"The said jury in the above-entitled matter did in their verdict and report award to the undersigned the sum of $140,000 as damages and compensation for the taking for the purpose detailed in the hearing.

"Now therefore, the undersigned hereby acknowledges payment by the city of Detroit of the sum of $140,000."

Plaintiffs also offered corporation counsel the following disclaimer:

"United Platers, Inc., a Michigan corporation, hereby disclaims any interest or right to share in the sum of $140,000 to be paid to H. E. Adelsperger, Jr., Vincent B. Arnold and Glenn Friedt, but expressly reserves to itself and for its exclusive benefit, its rights expressed in an appeal now pending in the Supreme Court."

Corporation counsel then agreed to waive the 3 instruments but refused to pay interest, and after a conference between corporation counsel, Repp, and plaintiffs' attorney, the receipt and disclaimer were returned to plaintiffs' attorney. No further efforts were made by plaintiffs to collect judgment and interest until this petition for mandamus was filed on May 5, 1954.

The trial court, after hearing proofs, allowed interest of approximately $4,000 for 2 periods. The first period included the 63 days between December 31, 1951, and March 2, 1952. The court allowed interest for this period on the theory that it was plaintiffs' duty to demand payment before interest would apply, and that such duty was not met by plaintiffs in conformity with the charter until December 31, 1951. The trial court further held that on January 2, 1952, plaintiffs realized that the city's position was final and it was their duty to seek a prompt decision by the court; that 2 months was ample time for plaintiffs to take such action, and that, therefore, plaintiffs were guilty of laches on March 2, 1952, the expiration of the 2-months' period.

The second period in which interest was allowed by the court was from the day suit was filed to the date of the trial court's opinion and decree, namely: May 5, 1954, to October 8, 1954.

Plaintiffs appealed; the city of Detroit cross-appealed.

Question 1: *Was a demand made as required by the charter of the city of Detroit?*

The charter under title 8, ch 1, § 16, provides:

"And it shall be the duty of the treasurer to securely hold such money in the treasury for the purpose of paying for the property taken, and pay the same to the persons entitled thereto, according to the verdict of the jury, on demand, and not pay out the money for any other purpose whatever."

Appellees rely on *Connor v. State Treasurer,* 333 Mich 219, and *Marion v. City of Detroit,* 284 Mich 476, holding that a claim for interest must be denied if plaintiffs fail to make a proper legal demand for the proper amount due. In the *Connor Case* this Court held (p 227):

"Connor's claim for interest after the judgment and up to the present time should similarly be denied until proper demand is made. If Connor is correct in its contention that the award draws interest to date, it could have waited for years, refusing to accept the amount of the awards on some technicality or other, until it needed the money, in the meantime drawing 5% interest on the whole amount at the expense of the State."

In the *Marion Case,* the question of demand was commented upon as follows (pp 488, 489):

"No demand was ever made until 7 months after the money for payment of the award was set aside, and after plaintiffs had been informed that it was available to them. The demand made by plaintiff's counsel in September cannot be said to be a demand even as of that date, as it was not a distinct demand for the sum of money to which the party making it was then entitled. 33 CJ, p 235.

"In no event, therefore, would plaintiffs be entitled to interest on the award after February 23, 1937, when the funds for payment thereof were set aside and plaintiffs were notified to this effect."

The record is silent as to why plaintiffs allowed a 9-month period (July 26, 1950, the date of treasurer's notification the money was available, and May 3, 1951, when plaintiffs first contacted the treasurer) to elapse without doing anything in regard to the award.

Plaintiffs seek to excuse this period of inaction on the theory that making a demand would constitute

an idle ceremony. Supporting this position appellants cite *Thal* v. *Detroit Board of Education,* 316 Mich 351, holding that the law does not require either individuals or corporate entities to indulge in idle ceremony or demand performance of an act that would be a useless or idle gesture. The *Thal Case* did not involve a condemnation award but was an action by school teachers to recover unpaid salaries. The *Thal Case* does not here apply because the city charter requires that a demand be made.

Plaintiffs' failure to make a demand for 9 months after receiving the treasurer's notice cannot be excused on the grounds that the treasurer did not have the right to insist upon the conditions of payment. Therefore, the plaintiffs' claim for interest on the award of $140,000 from July 26, 1950, to October 8, 1954, is denied between July 26, 1950 (when plaintiffs received the treasurer's notice), and May 3, 1951 (when plaintiffs first contacted the treasurer's office).

Question 2: *Did plaintiffs make a proper demand on May 3, 1951?*

The trial court's opinion contains the following:

"This court would be inclined to find that a sufficient demand for payment was made by the plaintiffs in the conferences between counsel for the plaintiffs and the condemnation award clerk of the city treasurer and Mr. Ingalls on either May 3, 1951, or a date in the vicinity of September 1, 1951, or on September 7, 1951, or on September 26, 1951, or December 28, 1951 (all of these dates representing dates of conferences in 1951 between various of the attorneys for the plaintiffs and various representatives of the city of Detroit), if it were not for the fact that at none of these conferences does the testimony indicate that plaintiffs' representatives supplied any written or satisfactory evidence that the demand was being made in conformity with the provisions

of the city charter, which required the treasurer to 'pay the same to the persons entitled thereto, according to the verdict of the jury, on demand.' "

There is no charter provision requiring a written demand. The record establishes that on May 3, 1951, plaintiffs made their demand. The fact that plaintiffs and the city treasurer differed as to what should be done before that demand would be met does not affect the fact that a demand was made. Plaintiffs met charter requirement as to demand on May 3, 1951.

Question 3:  *Did the city's offer to pay the award under certain conditions stop the accrual of interest?*

The trial court held that while the treasurer's notice of July 26, 1950, was a proper notification that the money was available to pay the award, that said notice provided for unlawful demands and conditions, namely, plaintiffs furnishing a signed release, a certificate of title, and a quitclaim deed.

The city became the title holder and took possession of plaintiffs' property on July 26, 1950, when the affidavit that the funds were available for payment was filed with the recorder's court, as provided for by the city charter. The city admits that it must pay interest from the date of the award (June 14, 1950) to the date of the treasurer's notice that money to pay the award was available (July 26, 1950).

The jury directed the payment of $140,000 to the 3 plaintiffs and United Platers, Inc., "as their interest may appear."

The city was advised on May 3, 1951, that plaintiffs had in their possession a written disclaimer of any rights to, or interest in, the award, signed and executed by United Platers, Inc. The quitclaim deed of United Platers, Inc., to plaintiffs was a matter of record. Under these conditions it is difficult to understand appellees' position, as stated in their brief, that:

"The appellants were only 3 of the former owners named in the verdict roll; United Platers was the fourth. Any and all demands made in behalf of less than all of the parties to whom the award was made payable by the jury were not legal demands under the charter."

Appellees contend it was not the treasurer's duty to determine who should be paid the condemnation award. The charter placed upon the treasurer the responsibilty of paying the money as directed by the jury as is disclosed by the following provision of the city charter:

"And it shall be the duty of the treasurer to securely hold such money in the treasury for the purpose of paying for the property taken, and pay the same to the persons entitled thereto, according to the verdict of the jury, on demand, and not pay out the money for any other purpose whatever."

The record sustains the trial court's conclusion that the city imposed conditions not provided for by the charter or statute. The city treasurer's representative, Mr. Repp, admitted that while these conditions were generally imposed, when objections had been made in the past he had paid the award without insisting that the conditions be complied with. In the instant case the city abandoned the conditions, and the award would have been paid if plaintiffs had agreed to the city's demand that they relinquish any right to interest. The offer to pay was a conditional offer, not required by charter or statute, and to rule otherwise would be to conclude that the city had in the past, and was willing in this case, to waive mandatory conditions required by law or by the charter.

This Court has recognized for many years the legal principle that a person making a tender, attaching conditions thereto, does so at his peril, and that

when the conditions imposed exceed the requirements, such tender does not put the opposite party at fault. The plaintiffs' right to interest from May 3, 1951, when demand was made, to the date of the decree, was not estopped by the city's conditional offer.

Question 4: *Does laches bar plaintiffs' claim for interest?*

In the trial court's opinion we find at the outset the following:

"This is almost a classic case where the immovable object confronts the irresistible force.

"In this particular example the established technicalities of the procedures of a large municipal corporation encountered the legal technicalities of one of our foremost law firms."

One of the attorneys arguing the case before this Court conceded that perhaps none of the attorneys representing plaintiffs or the city had exercised the best of judgment and that tempers were involved.

From January 2, 1952, the plaintiffs knew that they could only obtain interest through a court decree. Twenty-eight months passed without plaintiffs instituting action, and the record is silent as to why they allowed so much time to pass. The trial court held that plaintiffs were guilty of laches, stating:

"It is the belief of this court that where a sum of money as large as this is in dispute and interest at 5% is asserted to be running thereon, that the claimants would have a duty to seek a prompt decision by a court of competent jurisdiction."

Appellees call attention to *Yeomans* v. *Board of Supervisors of Ionia County,* 174 Mich 451; and *Supervisors of Cheboygan County* v. *Supervisor of the Township of Mentor,* 94 Mich 386, wherein this Court established the principle that mandamus being a

discretionary writ, stale claims are not favored. This, however, is an action at law and there is no claim that the statute of limitations had run.

The city did not offer to pay the award and allow the court to determine the right to interest. In fact, the city refused plaintiffs' suggestion on January 2, 1952, that this procedure be followed. A few days before this, however, on December 31, 1951, corporation counsel had approved plaintiffs' receipt form and the United Platers' disclaimer, and had stated that that was all that was necessary to close the deal.

Repp called attention that there was due the city 17 months' rent at $1,000 per month for occupancy of the condemned premises by United Platers, and their check for $17,000 was presented to the treasurer on January 2, 1952. The following from appellees' counterstatement of facts discloses what occurred after this check was presented:

"Mr. Ingalls said that the city would not admit any liability for back interest on this award. Mr. Weaver said that he did not want to attempt to settle that question at that point, that he thought the award ought to be paid so in any event there would be no further interest run on it; they could leave to future discussion or possibly a test case the question of whether they were entitled to the interest. Ingalls said the payment of $140,000 would be a waiver on their part of any right to interest, and Weaver said that the purpose of the letter was to prevent any such interpretation as that in the transaction. They would take the $140,000, but without prejudice to the question of interest."

Appellees' statement as to this discussion concludes:

"He handed the papers back and refused to give Weaver the $140,000, so he walked out. That was the last attempt that Mr. Weaver made to collect the money. The discussion terminated and all pap-

ers and check for rental were returned to Weaver. The check for the rental was mailed to the Detroit housing commission later that same day and was accepted.

"Repp testified that he had no recollection of the above conversations, but would not deny that they might have occurred."

In *Campau* v. *City of Detroit*, 225 Mich 519 (32 ALR 91), it was held that a confirmed condemnation award is a judgment and bears interest as provided by statute for money judgments.

*Detroit Trust Co.* v. *State Highway Commissioner*, 295 Mich 449, 454, dealt with petitioner's writ of mandamus to compel payment of an award on condemnation of property. This Court, in rejecting respondents' claim that petitioners were barred by laches, stated:

"Respondents contend further that the doctrine of laches applies to petitioner's writ which is brought approximately 7 years after the award was finally determined on appeal. This contention must be denied. There is no showing of a change of position of the parties which is unduly affected by the lapse of time, and further, the award when confirmed has the legal effect of a judgment and is enforceable for a period of 10 years."

In the instant case the city failed to pay or offer to pay the liquidated and conceded amount of $140,-000, without first obtaining from plaintiffs a waiver of claim to interest. In the trial court's opinion, after deciding that interest should be paid for approximately a 7-month period (December 31, 1951, to March 2, 1952, and May 5, 1954, to October 8, 1954), the court said:

"The writ should likewise provide for immediate payment of the principal sum, $140,000, to the plaintiff in order to stop the running of interest during

the course of any subsequent appeals which may be taken by either party."

The question before this Court is not whether appellants would have exercised better judgment if this action had been started within a reasonably short time after they knew that court action was necessary. Instead, the question is: Did they bar their right to interest by laches? We conclude they did not.

Plaintiffs' appeal in the nature of certiorari is granted. Defendants' cross bill is dismissed. The trial court's order of October 8, 1954, shall be modified allowing interest at 5% for the period from May 3, 1951, to October 8, 1954.

Modified and remanded. No costs to either party.

CARR, C. J., and BUTZEL, BOYLES, REID, and DETH-MERS, JJ., concurred with KELLY, J.

SMITH, J. (*dissenting*). The area of my disagreement with my Brother is narrow but critical. It relates almost exclusively to the deference to be accorded by this Court to the findings of the trial court. The trial court found that appellants had made no demand for the award until December 31, 1951, and that laches barred their claim for interest subsequent to a 2-month period thereafter. My Brother finds a demand on May 3, 1951, and rejects the doctrine of laches. In following such holding, I believe we would not be exercising an appellate function but would be, contrary to established law and precedent, substituting our judgment in an action at law, turning primarily on controverted fact issues, for that of the trial court.

The matter of laches largely controls substantial recovery here and will receive our first consideration. Plaintiffs received a large award from the condemnation. They were notified thereof by letter dated

July 26, 1950. Disagreement having arisen between representatives of the payor and payee as to just what instruments were to be furnished by the latter in exoneration of the obligation of the former, it soon became apparent that such differences could be resolved only by legal action. With this knowledge appellants delayed filing suit until May 5, 1954. No excuse whatever is offered for the long delay in instituting the action which was eventually taken. Plaintiffs assert their right to interest for substantially all of this period, thus converting their delay and inaction into a profitable investment at the expense of the public. This the trial court refused to allow and I am in complete accord with its holding.

It has been held from the earliest times that the creditors of a State may not by their own inaction increase their demands upon the public treasury through the accumulation of interest. In *People, ex rel. Bank of Monroe,* v. *Canal Commissioners,* 5 Denio (NY) 401, the court, after commenting upon the State's liability for interest in the case then before it, and the necessity of making proper demand for the principal sum, goes on to state that it is not to be taken from the foregoing (p 405):

"that the public creditor may refrain from demanding it and entitle himself to interest as long as he chooses to forbear asking for it after it becomes due, and to demand it when he pleases with the accruing interest. Such a result would be oppressive to the State and intolerable for its inconvenience."

The supreme court of the United States has held likewise. In *United States* v. *Sherman,* 98 US 565 (25 L ed 235), the court held as follows with respect to a claim for interest (pp 567, 568):

"Moreover, whenever interest is allowed either by statute or by common law, except in cases where there has been a contract to pay interest, it is allowed for delay or default of the debtor. But delay or default cannot be attributed to the government. It is presumed to be always ready to pay what it owes. Certainly there was no delay in the present case. The government paid the amount recovered against Callicott, *viz.,* the sum for which the verdict and judgment were given, as soon as its liability accrued."

We have expressed ourselves in similar terms. In *Connor* v. *State Treasurer,* 333 Mich 219, 227, we held:

"Connor's claim for interest after the judgment and up to the present time should similarly be denied until proper demand is made. If Connor is correct in its contention that the award draws interest to date, it could have waited for years, refusing to accept the amount of the awards on some technicality or other, until it needed the money, in the meantime drawing 5% interest on the whole amount at the expense of the State."

The trial court concluded that, under the circumstances, plaintiffs had been guilty of laches. The issue presented was primarily one of fact. In so saying we do not lose sight of the inherent difficulties in borderline cases, in distinguishing matters of fact from those of law. See, generally, Morris, Law and Fact, 55 Harvard LR 1303. Here, however, the question, phrased differently, is whether, under all of the circumstances, plaintiffs' delay in commencing action had been unreasonable, negligent, slothful, rendering, with the passage of time, the assertion of the right inequitable. This is generally, and here, a question of fact, *Oliver* v. *Poulos,* 312 Mass 188 (44 NE2d 1, 142 ALR 1094); *Shanik* v. *White Sewing Machine Corporation,* 25 Del Ch 371 (19 A2d

831); and, on certiorari to review mandamus, this Court is limited to questions of law. *Nephew* v. *Dearborn Library Commission,* 298 Mich 187 (135 ALR 1340).

We do not, of course, lose sight of the doctrine that a fact determination in the trial court may be so grossly in error that it, in law, is no determination at all and, hence, involves error of law. Such an error of law will result where a court finds that "We have been unable to discover any question of fact, depending upon conflicting evidence, in the case." *Bedlow* v. *New York Floating Dry Dock Co.,* 112 NY 263, 269 (19 NE 800, 802, 2 LRA 629); or where the "court, against remonstrance, finds a material fact which is not supported by any evidence whatever," *The E. A. Packer,* 140 US 360, 364 (11 S Ct 794, 35 L ed 453); or where "the finding of the trial justice on such a question of fact is entirely without legal evidence to support it," *Mondillo* v. *Ward Baking Co.,* 73 RI 473, 479 (57 A2d 447, 450); or where the trial court "finds facts without evidence or contrary to the only conclusion which may be drawn from the evidence." *Sanfacon* v. *Gagnon,* 132 Me 111, 113 (167 A 695, 696). Our Court is in full accord. "A finding, we have held, unsupported by evidence will be considered erroneous in law." *First National Bank of Allegan* v. *Grand Rapids & Indiana Railway Co.,* 195 Mich 1, 13.

It is apparent from the above that the situation referred to is unusual and extreme. The cases speak of findings of fact "without evidence," or "entirely unsupported by evidence." The terminology employed reflects the unique character of the error presented. It is an error, in short, so gross as to vitiate judgment. There is none of that in the case at bar. And to the extent that we in this Court equate evidence which we ourselves do not credit, to "no evidence whatever," precisely to that extent do we

substitute our judgment on the printed record for that of the trial court which saw, heard, and observed.

Here, as in any case involving laches in the commencement of an action, a defense sounding in equity, appealing to the discretion and conscience of the court, it is pertinent to consider the business experience of the parties, their reliance upon counsel, the experience and skill of counsel, the difficulties of the legal problems involved, and the reasons, or lack thereof, for failure to prosecute the action. The trial judge saw the witnesses, observed their demeanors, heard their reasons and excuses, or lack thereof, in support of their actions, himself at times questioned them, heard arguments of able counsel, and finally concluded, in a careful opinion covering 7 printed pages of record, that plaintiffs had unreasonably delayed their action. If we are to reverse on such a record we are simply substituting our judgment on what is here an issue of fact for that of the trial court. We are aware, of course, that injustice may result from an error in a determination of fact by the trier of the facts. But we are also aware that even appellate judges may err in their determinations of facts, and sound judicial prudence would suggest that such determination, made by a judge who has seen and heard the witnesses, be respected by us in the absence of gross and obvious error, so overwhelming as to impeach his judgment. Such is not present in this case.

The matter of the demand is more complex. It is put in issue by the provisions of Detroit's charter, which provides that the award shall be paid "on demand." What is a demand? It comprises 3 elements: (1) A distinct demand to the sum of money (2) to which the person making the demand is (3) then entitled. It cannot be made by a stranger, even though the sum be certain and presently due.

Nor can it be made by the obligee of a sum neither due nor certain. Here the obligees are prescribed by the charter. They must be "the persons entitled thereto." Entitled thereto not by common repute, or by the chain of title of record, but by "the verdict of the jury."

But the difficulty here is that one of the persons named in the judgment roll, namely, United Platers, Inc., had, subsequent to the commencement of the condemnation, and, in fact, by deed dated during the trial period, conveyed its interest in the property in question to the plaintiffs. Is United Platers thereafter entitled to make demand for the money? Should the demand be made by United Platers' transferee? What is reasonable proof to the city that the person presenting himself for United Platers has, in fact and in law, the authority to give a binding acquittance on behalf of United Platers? The simplest solution, as a matter of strict charter compliance, was an amendment of the verdict roll, but as counsel for plaintiffs put it, "we thought that was a lot of unnecessary work and the disclaimer was so easy to get." Easy to get, it is true, but more difficulty arose in convincing the city that it should be accepted, even when tendered, which question itself brings up a sharp issue of fact. There is testimony that such disclaimer was tendered and accepted on December 31st, and the trial court held that it was not until such date that written "or satisfactory" evidence was supplied that demand was made in conformity with the charter of the city of Detroit. The trial court found that it was on such date that Mr. Weaver, attorney for plaintiffs,

"went to the city hall and there saw assistant corporation counsel Mr. Ingalls, and there placed in his hand a written disclaimer from United Platers, Inc., one of the 4 parties who were jointly entitled to the $140,000 award made by the jury, and who were

entered as the persons entitled to that award on the verdict of the jury.

"The testimony indicates that whatever subsequent arguments concerning a waiver of interest may have divided the parties from that point forward in relation to the payment of this award, that no objection by the city was made to this disclaimer as being insufficient to establish that the plaintiffs were in fact entitled to the total sum of $140,000."

A disclaimer, then, was tendered to the city officials, and accepted by them on December 31st, and on this date the trial court found a valid demand. Had a valid demand also been made on a prior date, May 3d? As to that, we again are in an area of sharp dispute of fact. Mr. Repp, the condemnation award clerk, who had had a total of 18 years of experience in this office, says positively that no demand was then made. My Brother finds demand on such date. I cannot agree without rejecting certain testimony and accepting other, all, on the record before me, equally credible, involving both eminent counsel and trusted public officials. The choice between them lies with the trial judge, not with us. As the Indiana court put it in *Kelley* v. *Dickerson,* 213 Ind 624, 630 (13 NE2d 535, 538): "This court cannot be both a court of review and a trial court."

Affirmed. No costs.

SHARPE, J., concurred with SMITH, J.